THEODORE ANGELO

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield September 30, 1880.*

1. CRIMINAL LAW—*capacity to commit crime.* By the statute an infant under the age of ten years is incapable of committing crime, and can not be convicted of any crime or misdemeanor. At the age of fourteen the law presumes capacity, without proof of a knowledge of good and evil, but between these ages the evidence of that malice which is to supply age must be strong and clear beyond all doubt and contradiction, as the *prima facie* presumption is that the party is *doli incapax.*

2. On a charge of homicide against an infant a little more than eleven years old, the legal presumption being that he was incapable of committing any crime, it devolves on the prosecution to make strong and clear proof of capacity before a conviction can be had, and without such proof a judgment of conviction will be reversed.

3. SAME—*commenting on fact that accused did not testify.* It is highly improper and unprofessional in counsel for the prosecution in his argument to the jury to refer to the fact that the accused was not placed on the stand as a witness, as one of the reasons why he should be convicted, and the fact that such counsel was stopped by the court and the jury directed to disregard that portion of the argument, may not cure the wrong done, in the minds of the jury.

WRIT OF ERROR to the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for the plaintiff in error:

We insist that there was no evidence to justify the verdict. The plaintiff in error is a mere child, and at the time of the homicide was only a little over eleven years old, and was *prima facie* incapable of committing a crime. Rev. Stat. 1874, p. 394, sec. 282. After arriving at the age of fourteen years he is presumed to be of sound mind, but before that time the burden of proof of sound mind, or knowledge of the distinction between good and evil, is on the People.

14—96 ILL.

1 Russ. on Crimes, 2. Says this author: " On the attainment of fourteen years of age the criminal actions of infants are subject to the same modes of construction as those of the rest of society, for the law presumes them at those years to be *dola capaces*, and able to discern between good and evil, and therefore subjects them to capital punishments as much as if they were of full age ; but during the interval between fourteen years and seven (ten under our statute, Rev. Stat. 1874, p. 394, sec. 283) an infant shall be *prima facie* and deemed *doli incapax*, and presumed to be unacquainted with guilt."

See, also, 1 Bishop Criminal Law, secs. 284, 285 and 285a. Says the author: "The evidence of that malice which is to supply age ought to be strong and clear beyond all doubt and contradiction. 4 Blackstone's Commentaries, 23 ; Broom's Legal Maxims, (2d ed.) 233 ; *State* v. *Hundy*, 4 Harrington, 566."

We search the record in this case in vain for one word of proof of the malice or capacity of the boy. Nothing is disclosed as to him except the fact that he accompanied his blind and insane father, and, of course, was the constant listener to those unnatural stories of the number of men killed at his house, as detailed by the witnesses. Under our statute an infant under ten years is incapable of committing crime. From ten to. fourteen he is *prima facie* incapable, and during the period last named the same burden is on the People to prove his capability as to prove any other material fact. It must be proved beyond a reasonable doubt. The fact can be no more inferred, without evidence,.than can any other material fact. It must be proved by competent evidence. This child was a little over eleven years of age, near the borders of legal incapacity, and the presumptions are relatively stronger that he is incapable of crime. See Bishop, *supra*.

Mr. JUSTICE WALKER delivered the opinion of the Court :

At the August term, 1878, of the Morgan circuit court, the grand jury presented an indictment against John Angelo,

then about seventy-eight years of age, and his son, Theodore Angelo, about eleven years of age, for the murder of Isaac Hammill. A trial was had at the following November term of the court, resulting in the acquittal of John, on the ground of insanity, and the conviction of Theodore of manslaughter, and the jury fixed the term of his imprisonment in the penitentiary at six years. A motion for a new trial by Theodore was entered, but overruled by the court, and he was sentenced to the Reform School for four years; and he prosecutes error, and brings the record to this court, and urges a reversal, on several grounds.

The statute has provided, by section 282 of the Criminal Code, that a person shall be considered of sound mind who is neither an idiot nor lunatic, nor affected with insanity, and who has arrived at the age of fourteen, or before that age if such person knows the distinction between good and evil. The 283d section provides that an infant under ten years of age shall not be found guilty of any crime or misdemeanor.

In Great Britain the lowest possible period fixed by law at which an infant could be convicted for a crime, was seven, whilst our statute has fixed the period at ten years. In both countries fourteen is the period after which the law presumes capacity, without proof of knowledge of good and evil.

Blackstone, vol. 4, p. 23, says: "Under seven years of age, indeed, an infant can not be guilty of felony; for then a feloneous discretion is almost an impossibility in nature." He further says that convictions have been had of infants between seven and fourteen;—"But in all such cases the evidence of that malice which is to supply age ought to be strong and clear beyond all doubt and contradiction."

In Broom's Legal Max. pp. 232–3, it is said: "With regard to persons of immature years, the rule is, that no infant within the age of seven years can be guilty of felony, or be punished for any capital offence; for, within that age, an infant is by presumption of law *doli incapax,* and can not be endowed with any discretion, and against this presumption no aver-

ment shall be received. This legal incapacity, however, ceases when the infant attains the age of fourteen years, after which period his acts become subject to the same rule of construction as those of any other person."

"Between the ages of seven and fourteen years an infant is deemed *prima facie* to be *doli incapax;* but in this case the maxim applies, *malitia supplet ætatem*—malice (which is here used in its legal sense, and means the doing of a wrongful act intentionally, without just cause or excuse,) supplies the want of mature years. Accordingly, at the age above mentioned, the ordinary legal presumption may be rebutted by strong and pregnant evidence of mischievous discretion; for the capacity of doing ill or contracting guilt is not so much measured by years and days as by the strength of the delinquent's understanding and judgment. In all such cases, however, the evidence of malice ought to be strong, and clear beyond all doubt and contradiction." See Archbold's Crim. Plead. pp. 11 and 12, where the same rule is announced. Nor are we aware of any opposing authority.

There is uncontradicted evidence in the record that plaintiff in error was little more than eleven years of age when the homicide was committed. This evidence was not contradicted, but was virtually conceded by the eighth instruction asked and given for the People. If this was true, and the evidence tended to prove it, the rule required evidence strong and clear beyond all doubt and contradiction, that he was capable of discerning between good and evil; and the legal presumption being that he was incapable of committing the crime, for want of such knowledge, it devolved on the People to make the strong and clear proof of capacity, before they could be entitled to a conviction. This record may be searched in vain to find any such proof. There was no witness examined on that question, nor did any one refer to it. There is simply evidence as to his age. For aught that appears, he may have been dull, weak, and wholly incapable of knowing good from evil. It does not appear, from even the circumstances in evi-

dence, that he may not have been mentally weak for his age, or that he may not have even approached idiocy.

The law presumes that he lacked mental capacity at his age, and that presumption has not been overcome by the requisite proof, or, in fact, any proof. The court below should therefore have granted a new trial, and erred in refusing it.

Again, the jury were not clearly and fully instructed on this question. Several instructions given for the People omitted this rule, when they should have been qualified by informing the jury that proof, and clear proof, of capacity must be given. In such a case the mere announcement of the rule in general terms, as was done in the eighth of the People's instructions, was not sufficient. The jury may have been misled by the instructions that should have been qualified.

It is to be regretted that counsel who assisted the prosecuting attorney referred, as he did in his argument to the jury, to the fact that plaintiff in error was not placed on the stand as a witness, as one of the reasons why he should be convicted. It is true, that when stopped by the court, he said it was inadvertently done, and the jury were directed by the court to disregard that portion of his argument. Notwithstanding what he said, and the direction of the court to disregard it, who can know what effect it may have had on the jury in forming their verdict? Such comments are prohibited by the statute, and it is strange that any attorney should so far forget the rights of the accused, and his professional duty, for a moment, even in the heat of discussion; but he said it was inadvertent, and we are loth to believe that any attorney would intentionally act so unfairly and unprofessionally. We can not conceive that any member of the bar could deliberately seek by such means to wrongfully procure a conviction and the execution of a fellow being, when his highest professional duty to his client only requires him to see that there is a fair trial according to the law and the evidence. Where

such things are done, whether intentionally or inadvertently, it may make an impression on the minds of the jury that nothing can remove. And who can say that this inadvertence may not have produced the verdict of guilty?

We think plaintiff in error has not had a fair trial, and the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*