ISAAC MILLER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 23, 1905.*

1. CRIMINAL LAW—*admissions of accused on former trial may be proved on second trial.* Admissions and statements made by the accused when testifying as a witness in his own behalf on a former trial may be proven by the People on a subsequent trial, although the accused does not testify on the ·latter trial. (WILKIN and HAND, JJ., and CARTWRIGHT, C. J., dissenting.)

2. SAME—*right of cross-examination when admissions at former trial are being proved.* Where the admissions of the accused when testifying in his own behalf on a former trial are being proven by the People by asking the witness, the court stenographer, whether certain questions were asked the accused and what answers were made, the accused is entitled, on cross-examination, to have the witness detail other questions and answers tending to explain or qualify the admissions.

3. SAME—*when remark of court is prejudicial error.* A remark by the court, when ruling upon the propriety of cross-examining a witness ,for the People for the purpose of qualifying or explaining certain admissions of the accused to which the witness had testified, that "He is here [speaking of the accused] and he can answer for himself in regard to it," is prejudicial error, as infringing upon the personal privilege of one accused of crime to remain silent.

4. EVIDENCE—*evidence as to whether a witness was intoxicated is competent.* Evidence as to whether the witness, even though it be the accused testifying in his own behalf, was intoxicated at the time of the occurrence to which he is testifying is competent, as tending to show his ability to see, understand and remember what was transpiring.

5. SAME—*evidence as to intoxication is competent where plea is self-defense.* In a murder trial, where the plea is self-defense, proof as to whether the accused was intoxicated at the time is competent, for the purpose of aiding the jury to determine whether he acted under the influence of a well-grounded and reasonable belief he was in danger of losing his life or receiving great bodily harm.

6. SAME—*party seeking to prove intoxication is not concluded by witness' denial.* One entitled to prove that a witness or party was intoxicated at a particular time is not concluded by the denial

of such witness or party that he was drunk, but may show the drinking of intoxicants by the witness or party so recently before the time in question, and in such quantities, as would most probably produce intoxication.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. JOHN A. GRAY, Judge, presiding.

WILLIAM H. HARTZELL, for plaintiff in error.

H. J. HAMLIN, Attorney General, and GEORGE V. HEL-FRICH, State's Attorney, (GEORGE B. GILLESPIE, of counsel,) for the People.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Isaac Miller, the plaintiff in error, on a trial in the circuit court of Hancock county, was adjudged guilty of the crime of murder in the killing of one James Lake, and has prosecuted this writ of error to obtain a review of the record of his conviction.

Lake came to his death from a pistol shot on June 20, 1903. Miller was then village marshal of the village of Plymouth, in Hancock county. The village had an ordinance prohibiting "rapid and immoderate driving of a horse or a team of horses" in or along the streets or public places within its limits. The ordinance provided a penalty for the violation of its provisions, and made it the official duty of the marshal to "stop" any person engaged in driving a horse or team in the manner prohibited by the ordinance. About ten o'clock on the night of the 20th day of June, 1903, the deceased, James Lake, accompanied by four companions, all riding in a surrey drawn by a pair of horses, drove into the village and hitched their team at what is called by some of the witnesses the "public square" and by others the "park," alighted from the surrey and went to two or more saloons. They returned to the surrey, and subsequently drove the team and surrey at a rapid and immoderate rate of speed in

the streets around the square or park.   Miller endeavored
to stop them, but they ignored him, and after driving at a
high pace around the square and about one-half the way
around again, they passed to other streets and continued to
drive, in defiance of the ordinance and of the officer, through
different streets of the village.   At one of the street intersec-
tions Miller, who was standing in or near the middle of the
street where the sidewalk, if projected, would have crossed
the street, sought again to stop them.   The evidence is con-
flicting as to what then occurred.   It will suffice here to say
that a number of shots were fired, one of which struck Lake
with fatal effect.   He was sitting in the front seat of the
surrey, two other of the members of his party being on the
same seat.

As in the view we have of the record the cause must be
again submitted to a jury, we refrain from further recita-
tion of facts appearing from the testimony.   It is sufficient
for the purposes of this investigation to say that the defense
sought to be maintained was, that the first shot fired by the
plaintiff in error was in the air over the heads of the horses;
that shots were fired from the surrey at him, and that he
acted in his necessary self-defense in firing such other shots
as he discharged, and that there was evidence tending to sus-
tain the plea of self-defense.

The cause had been tried at a former term and the jury
had failed to agree.   On that trial the plaintiff in error ap-
peared as a witness and testified in his own behalf.   On the
second hearing, the record whereof is now before us, the offi-
cial reporter who took notes of the testimony given on the
first hearing was called and sworn as a witness for the Peo-
ple, for the purpose of proving certain statements alleged to
have been made by the plaintiff in error when testifying as a
witness on the first trial.   This witness, the reporter, testified
that he was present at the former hearing and heard plaintiff
in error testify as a witness in his own behalf.   The reporter
was then permitted to testify that on said former trial certain

questions were asked of the plaintiff in error and that he answered the same, the questions as asked and answers as given in reply being stated categorically. It was entirely proper for the prosecution to prove on the second hearing any statements that the plaintiff in error had made when testifying in his own behalf on the first trial. Admissions and statements made by him as a witness were competent to be received in evidence against him to the same extent as if the statements and admissions had been made by him out of court. The minds of the jury may, of course, be directed by such testimony to the fact that the defendant has a legal right to testify in the case on hearing, but that furnishes no reason for holding that his statements, admissions and declarations so made should not be produced in evidence against him. He elected to exercise a right which the law gave him, to testify in his own behalf, and in so doing he became as other ordinary witnesses, save that it was proper for the jury to consider that he was the defendant, and was being tried for the crime charged. The statements or admissions made by him when so testifying were in nowise privileged, but might lawfully be proven upon another trial for consideration in determining his guilt or innocence.

On cross-examination of the official reporter counsel for the plaintiff in error propounded questions to the witness calling on him to state whether or not, on the examination of the plaintiff in error as a witness on the former hearing, certain other specified questions were not asked of him, and to give the replies of the plaintiff in error to such questions. The court sustained objections to these questions. The court ruled that as the prosecution had only asked that the official reporter, as a witness, should state certain specified questions which had been asked of the plaintiff in error when testifying as a witness and the specific answers made by the plaintiff in error thereto, the cross-examination must be restricted to an inquiry whether the questions asked and answers thereto were fully and completely stated by the re-

porter.   In this ruling the court fell into error.   The plaintiff
in error was entitled to have the jury know all the statements
that he made in the course of his examination as a witness
on the former trial touching the points or matters to which
the questions and answers called out by the prosecution re-
lated.   Other questions and answers propounded to him
upon the same examination which tended to explain, qualify,
correct or in any manner throw light on the matters touched
upon by the questions and answers which were proven by the
People were proper, being necessary to a full and accurate
understanding of the statements or admissions sought to be
proven.   (*Aulger* v. *Smith,* 34 Ill. 534;  *Young* v. *Bennett,*
4 Scam. 43;  *Arnold* v. *Johnson,* 1 id. 196.)   That the wit-
ness who was called to detail the statements made by the
accused when testifying as a witness on the former trial was
the official court reporter has no effect to change or modify
this rule.   We have no statute giving any special weight
to stenographic notes, and the former evidence of a witness
may be established by any person who heard the testimony
given and can swear to it from memory.   (16 Cyc. 1110.)
All that the plaintiff in error said at the same examination on
the subject or matter to which the questions and answers
brought out by the People related was provable in behalf of
the plaintiff in error the same as if mere bystanders at the
former trial had testified as to what statements the plaintiff
in error then made.   To hold that the People might select
such questions and answers as were most favorable to the
prosecution and that other questions and answers propounded
and answered in the course of the same examination, touch-
ing and bearing on the same subject or matter, could not be
made known to the jury, would be to receive but a garbled
report of what the plaintiff in error really said as a witness.
(16 Cyc. 1105.)   The ruling was erroneous, and we find
that it was also prejudicial to the cause of plaintiff in error.

The questions and answers brought out by the prosecu-
tion were those propounded and answered on cross-examina-

tion of the plaintiff in error as a witness, and, as is allowable on cross-examination, consisted of direct interrogatories, to which corresponding responses were demandable. They related to the firing of pistol shots by plaintiff in error only. Counsel for the plaintiff in error desired to have detailed the statements made by the plaintiff in error relative to the firing of shots at him by some of the parties in the surrey, which, as he contended, occurred after he fired the first shot over the heads of the horses and before he fired the other shots to which the statements brought out by the People related. If the plaintiff in error did testify that the deceased, or those with him and parties to the violation of the ordinance, fired upon him when he attempted to stop the team and before he fired a shot, he was entitled to have that statement considered by the jury as tending to show that he was in apparent imminent danger and acting in self-defense, and also in determining whether his act was the result of malice, and therefore murder, or whether, under the law, the killing was manslaughter. Other than those in the carriage, four of whom testified for the prosecution, no witness was present to tell just what took place at the time of the killing. The companions of the deceased denied that they were intoxicated or that a shot was fired from the carriage by anyone, while several witnesses testified that the deceased and his companions were intoxicated, and several witnesses testified that one or more shots was or were fired from the carriage, and one witness testified that Milstead, one of those in the carriage, stated on the evening of and after the tragedy that he shot one or two shots at plaintiff in error. It will thus be seen that if the bare admission of plaintiff in error that he shot three shots, and the last one at the carriage, was to go to the jury, it was of vital importance that the qualification, if any, that he fired no shot until fired upon from the carriage, should also go.

When announcing the ruling denying to the plaintiff in error the right to have such questions and answers detailed

by the witness, the court reporter, the court, after stating that the plaintiff in error had a right only to cross-examine as to the correctness of the testimony of the reporter as to the questions and answers called for by the prosecution, said, speaking of plaintiff in error, "He is here and he can answer for himself in regard to it." This remark was objectionable. It, in effect, said to the jury that the plaintiff in error had the legal right to appear as a witness in that present hearing, and could then explain, qualify or correct, as he might desire, any statement brought out by the testimony of the reporter. The statute, which authorizes any one accused of crime to testify in his own behalf, confers a right or personal privilege to speak or remain silent. This statute (Crim. Code, div. 13, sec. 6,) expressly provides that his election not to testify shall not create any presumption against him, and that the court shall not permit any reference or comment to be made on the failure to testify. This remark of the court would necessarily create a presumption against the plaintiff in error in the event he should elect not to appear as a witness in the cause on trial, and, as the court remarked, "answer for himself in regard to it." No objection was made or exception preserved to this remark. In *Angelo* v. *People,* 96 Ill. 209, and in *Quinn* v. *People,* 123 id. 333, counsel for the prosecution, in argument to the jury, referred to the fact that the defendant had not seen fit to testify and explain or answer certain things claimed to have been proved against him. In each of the cases objection was made, and in the *Angelo case* the court stopped counsel and directed the jury to disregard that part of his argument, and in the *Quinn case* the court stopped counsel and then explained to the jury that the remarks were improper. In each of those cases we held that the reference made by counsel to the right of the defendant to give testimony in his own behalf interfered with a fair and impartial trial, to which the defendant was entitled under the law, and notwithstanding the action of the court in restraining counsel and directing the jury to disregard what

had been said, the violation of the statute was deemed prejudicial to the right of the defendant to a fair trial and fatally erroneous. In the case at bar the remark was that of the court, and not of counsel; but it was in a greater degree prejudicial to the right of the plaintiff in error to a fair and impartial trial under the law, for the reason, coming from the court, it would have greater weight with the jury. In view of the state of the proof in the record, if objection had been preserved to this remark we should have felt it our duty to reverse the judgment because of it.

The witness (the reporter) was also inquired of concerning the testimony of plaintiff in error upon the question of his condition upon the night of the shooting, as to sobriety. The witness stated that plaintiff in error was asked if he was intoxicated, and that he answered, "No, sir;" that he was asked how much liquor he drank that evening, and answered that he did not think he drank any; that he testified that he was in two saloons on that evening, and probably took a glass of beer at each of the saloons. This testimony was given, as was that relating to the shooting, by having the reporter quote the question and the answer as found in his notes. It was given over the objection of plaintiff in error, and exception was preserved. ·

When the plaintiff in error was testifying as a witness on the former trial it was competent to have asked whether he was intoxicated at the time of the occurrence of the events to which he was testifying. Intoxication to a degree that it affects the capacity of the witness to see, understand and remember what was transpiring may always be proven. (2 Wigmore on Evidence, sec. 933.) The same author says (1 Wigmore on Evidence, sec. 235,) that intoxication may be evidenced by the person's conduct, by predisposing circumstances,—that is, by the drinking of intoxicating liquors or by the condition of intoxication prior or subsequent to the time in question but within such time as that the condition may be supposed to be continuous. If it was proper for the

jury before whom the plaintiff in error testified to have heard proof to show that he was intoxicated at the time of the occurrences which he undertook to relate in his testimony in order that they might the better consider and weigh his statements, it would seem to follow, naturally and necessarily, that it would be proper and competent that the jury empaneled at the second hearing should, when hearing re-produced before them his statements made when testifying as a witness, also have re-produced his statements which tended to show whether he was then in a condition of intoxication.

We think the jury were entitled, for another reason, to be advised of it if the plaintiff in error was intoxicated at the time the fatal shot was fired.   His plea that he acted in self-defense, from danger real or apparent, called upon the jury to determine whether he acted under the influence of a reasonable and well-grounded belief that he was actually in danger of losing his life or receiving great bodily harm.   Under our law of self-defense a man threatened with danger may judge from appearances and determine by circumstances surrounding him whether he is actually in danger of losing his life or suffering great bodily harm,. and if he acts upon a reasonable and well-grounded belief that he is really in danger, he will not be held criminally liable for a mistake in the extent of the real danger if other reasonable and judicious men would have also in like manner misapprehended the real situation.   In order to arrive at a just and proper conclusion as to the reasonableness of the acts of the plaintiff in error on the occasion in question we think it not at all improper that the jury should have known that he was intoxicated, if such was the fact.   His ability to see and comprehend what was occurring, and to form therefrom a reasonable and well-grounded belief that he was in danger of losing his life or suffering great bodily harm, would be affected, in a greater or less degree, by intoxication.   A man in a state of intoxication may, because thereof, misconceive his situation and surroundings, misapprehend the acts and conduct and purposes of others,

and arrive at a wholly unfounded, irrational and unjustifiable belief of personal danger which would not find lodgment in his mind if his mental faculties were not in an abnormal condition.

Proof of matters, of any nature, not connected with the alleged crime should not be admitted in proof against a defendant,—and that is the principle announced in *Addison* v. *People,* 193 Ill. 405. In that case the prosecution sought to show, and were allowed to prove, that the defendant had called a boy to come to him from across the street and induced the boy to drink beer, and also that defendant had been drinking and was drunk on the day succeeding the commission of the alleged crime, and to prove other instances of drinking, which, as we held, had no connection or relation to the crime charged or any ingredient thereof, and only tended to create a prejudice against the defendant because of conduct in nowise connected with the crime charged.

In cases in which it is competent to prove that a witness or a party was intoxicated at any particular time, the party entitled to prove that fact is not concluded by the denial of such witness or party that he was drunk, but may properly establish his contention by giving in evidence what Mr. Wigmore calls "predisposing circumstances,"—that is, the drinking of intoxicating liquors by such witness or party so recently before the time in question and in such quantity as that, in consequence thereof, it is most probable he would be in a condition of intoxication at the time in question. In *Title* v. *Russel,* 2 Day, 202, it was said: "Can a court say that evidence to show that a man has within an hour before drunk a quart of rum is not relevant to prove that the man is drunk? * * * It is barely possible that the consequence of a man's drinking a quart of rum may not be drunkenness, but generally it is not only a highly probable but a certain consequence. Courts and juries in weighing evidence are to calculate on probabilities—not possibilities." It is for the court to determine whether the proffered testimony as to the drink-

ing of intoxicating liquors is such that it fairly tends to show that the intoxicant probably would produce a condition of intoxication at the time of occurrences under investigation. If the drinking was too remote in point of time or too insignificant in point of quantity to have such tendency to prove that a condition of intoxication existed at the time under investigation, the court should refuse to admit it.   If the intoxication is unrelated to the offense charged or matter under investigation, proof pertaining thereto should not be admitted.

For the reasons indicated the judgment must be reversed, and the cause will be remanded for such other and further proceedings as to law and justice shall appertain.

*Reversed and remanded.*

WILKIN and HAND, JJ., and CARTWRIGHT, C. J., dissenting:

While we agree that the judgment of conviction rendered against the defendant in the above entitled case should be reversed, we think the majority opinion is wrong in holding it proper for the People to prove in chief what the defendant testified to upon his first trial.   Section 609 of the Criminal Code (1 Starr & Cur. Stat.—2d ed.—p. 1397,) provides that the defendant in a criminal case shall only at his own request be deemed a competent witness and that his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect.  To permit the People, in the first instance, to call the official reporter and prove by him that the defendant was a witness upon his first trial, and to permit him to state to the jury what he testified to upon that trial, was to directly challenge the attention of the jury to the fact that defendant was a competent witness in his own behalf upon the trial then in progress, which was as much a violation of the statute as it was for the judge, in express terms, to inform

the jury that defendant had a right, if he saw fit, to go upon the stand in that trial and contradict the testimony of the witnesses of the People which tended to establish his guilt. The doctrine that the same rules of cross-examination and impeachment apply to a defendant who takes the stand in his own behalf as apply to other witnesses is applicable only to the trial in which the defendant is a witness, and does not authorize the People to make a case against the defendant on a second trial by proving what he testified to on a former trial and before he has taken the stand as a witness on the second trial. To hold otherwise is to abrogate the statute hereinbefore referred to, and deprive the defendant of the protection of said statute.