THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VICTOR DI MASO *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 80-782, 80-783 cons.

Opinion filed September 9, 1981.

Victor F. Ciardelli, of Chicago, and Victor D. Quilici, of Bensenville (Patrick M. Cummings, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Lester M. Joseph, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendants, Victor Di Maso and James Sticka, were charged with aggravated battery and armed violence. A jury found them guilty of aggravated battery and the trial court sentenced both defendants to terms of 3 years. On appeal defendants contend that they were denied effective cross-examination in violation of their sixth-amendment right to confrontation, and that the prosecutor's misconduct during the examination of witnesses and in closing argument deprived defendants of a fair trial. Because of our view of the matter, only a few facts need be recited.

The State's case hinged on the credibility of Harry Verner, the victim and only eyewitness to the battery. Defendants presented an alibi defense. The primary issue was one of identification.

During pretrial investigation, defense counsel learned that 10 days prior to the March 1, 1979, occurrence, Verner had been found in a snow bank and treated at a hospital. The treating physician recommended that Verner receive further treatment at Madden Mental Health Center, where Verner had been receiving treatment prior to that date. Defense counsel subpoenaed the records from Madden. Madden refused production of the documents, invoking the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1979, ch. 91½, par. 801 *et seq.*). Defense counsel argued to the trial court that the records were essential to defendant's effective impeachment of Verner. Counsel stated that the records would show that Verner suffered blackouts and was disoriented due to problems with alcoholism and drug addiction. The trial court stated that it was interested only in Verner's competency for trial on March 1, 1979. After an *in camera* inspection of the records, the trial court ruled that the Act precluded production of these documents to defense counsel. The trial court also granted the State's motion *in limine* barring the defense from questioning Verner as to his treatment at Madden. The trial court did state, however, that the treatment could be discussed if defense counsel presented the treating therapist.

During cross-examination, Verner stated that he went to Madden on March 1, 1979, to visit a friend named Gale Grossman. He denied that she was a counselor or that he was seeing her for drinking or drug abuse problems. Verner denied ever using a narcotic drug. He admitted that he had suffered blackouts near February 20, 1979, and was admitted to West Suburban Hospital because of a spell. During March he only had a beer two or three times a week. On March 1, 1979, after leaving Madden, he stopped off for a beer. Within one hour he drank three beers and left. Thereafter the battery occurred.

Defense counsel called Gale Grossman as a witness. After she stated that she was a psychologist at Madden and that she knew Verner, defense counsel was not permitted to question her about Verner's treatment.

The Mental Health and Developmental Disabilities Confidentiality Act provides in section 10 that:

"Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications." (Ill. Rev. Stat. 1979, ch. 91½, par. 810.)

None of the enumerated exceptions are applicable here.

The Act clearly seeks to promote the State interest in confidentiality of psychiatric treatment by protecting confidential communications between a patient and therapist. In *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, however, the Supreme Court held that an accused's right to discredit a principal State witness by presenting facts showing bias was paramount to any State interest promoted by State statutes which forbade the disclosure of juvenile records. In the trial court, the prosecution had successfully obtained a protective order to prevent the defense from questioning the key State witness about a juvenile record and his resulting probation status. The Alaska Supreme Court affirmed the conviction on the basis that defense counsel's question adequately exhausted the bias area despite the exclusion of the juvenile record. In reversing the conviction, the supreme court stated:

"On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness * * *. On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which ' "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." [Citation.]' " (415 U.S. 308, 318, 39 L. Ed. 2d 347, 354-55, 94 S. Ct. 1105, 1111.)

The court acknowledged the legitimacy of the State's interest in preserving anonymity of juvenile records, but concluded that defendant's right to effective confrontation in such a case must prevail over the statutory protections of the juvenile records.

■■■ We believe that if the excluded evidence was relevant towards a particular attack on the credibility of a key State witness, then *Davis* dictates that the defendant's right to effective cross-examination prevails over any State interest in maintaining the confidentiality of psychiatric

treatment. A brief examination of evidentiary principles governing the relevancy and admissibility of impeachment evidence is necessary. Character evidence is a general attack on credibility. Such evidence of the witness' prior conduct is relevant and admissible in cross-examination insofar as it bears on credibility, but the cross-examiner may not contradict the response elicited by the witness. (See, *e.g., People v. Matthews* (1959), 17 Ill. 2d 502, 162 N.E.2d 381.) Where the evidence is not introduced solely for purposes of impeaching character, but instead is introduced for purposes of attacking the witness' perception and memory near the time of the events about which he is testifying, the attack, as in one showing bias, is a particular attack on credibility. Such evidence is not collateral and may be introduced either in cross-examination or in defendant's case-in-chief. *People v. Morris* (1964), 30 Ill. 2d 406, 197 N.E.2d 433; *Miller v. People* (1905), 216 Ill. 309, 74 N.E. 743; *cf. People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201. See also 3A Wigmore, Evidence §§989, 994, 1005 (Chadbourn rev. 1970).

■■ Our courts have repeatedly held that evidence of habitual drug use is a significant factor in evaluating witness credibility not only because it evinces a generally dishonest character, but also because it is particularly probative of the witness' abilities to perceive and recall accurately. (*People v. Strother; People v. Lewis* (1962), 25 Ill. 2d 396, 185 N.E.2d 168; *People v. Bazemore* (1962), 25 Ill. 2d 74, 182 N.E.2d 649; *People v. Boyd* (1959), 17 Ill. 2d 321, 161 N.E.2d 311; *People v. Lurry* (1979), 77 Ill. App. 3d 108, 395 N.E.2d 1234; *People v. Perez* (1968), 92 Ill. App. 2d 366, 235 N.E.2d 335.) Especially where, as here, the issue is one of identification, defendant is entitled to cross-examine and to present independent evidence of matters regarding the witness' "powers of discernment and his capacity to form a correct judgment * * *." (*People v. Morris.*) Our supreme court applied this rationale when it held that defendant is entitled to proceed beyond a witness' denial of drug addiction to display the scarred arm before the jury. (*People v. Strother.*) Although the physical demonstration in *Strother* actually occurred at the cross-examination stage, clearly it was not testimonial, and was independent evidence offered to contradict the denial.

■■ We do not believe that the proffered evidence of Verner's habitual drug use is so remote from the relevant events about which he testified so as to be rendered irrelevant for impeachment purposes. Verner was allegedly treated for addiction approximately two months prior to the battery. We note, too, that Verner was the only eyewitness against defendants. His testimony was therefore critical. Moreover, Verner's credibility was a question for an informed jury to determine based upon all the relevant facts. (*People v. Strother.*) Accordingly, we hold that

defendants were entitled to present evidence contained in the medical records as to Verner's drug addiction and resulting disorientation.

■■ ■ Unlike the inferences which may be drawn from the fact of drug addiction, the fact of alcoholism is not probative of the witness' perceptual abilities at any given point in time. Where the proffered evidence is only that the witness is an alcoholic, it is doubtful whether it is a relevant matter for cross-examination. (*People v. Matthews.*) And it is clear that it may not be presented extrinsically to rebut the witness' denial since it is in the nature of general character impeachment. (3A Wigmore, Evidence §931 (Chadbourn rev. 1970).) Where, however, the proffered evidence is that the condition of alcoholism causes the witness to suffer blackouts when he drinks, and evidence has been presented that the witness was drinking near the time of the events of which he testifies, then the evidence is admissible as probative of the witness' sensory capacity. (*State v. Hawkins* (Minn. 1977), 260 N.W.2d 150.) In the present case, Verner admitted that he had been drinking on the day of the occurrence. Evidence was introduced that 10 days before, he had been found in a snowbank and that a doctor recommended he be treated. Evidence that drinking triggered blackouts coupled with the other evidence would have permitted the jury to infer that the drinking on the day in question similarly affected his perceptual capacities. In light of the surrounding circumstances, the jury should have heard the evidence that drinking triggered blackouts in Verner.

■■ We also believe, for the same reasons, that the trial court improperly ruled that Gale Grossman's privilege prevailed over defendant's sixth amendment rights. Any privilege which she possessed existed only "in behalf" of the patient, Verner. (Ill. Rev. Stat. 1979, ch. 91½, par. 810.) And we have held that the State's interest in protecting the patient under these facts must yield to defendants' right to effective cross-examination.

Since it is unlikely to recur in the retrial, it is unnecessary to consider the issue of improper prosecutorial conduct.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

RIZZI, P. J., and McGILLICUDDY, J., concur.