THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DENNIS FOSKEY, Defendant-Appellant.

First District (4th Division)  No. 86—2467

Opinion filed October 13, 1988.

Terrance Gillespie, of Genson, Steinback & Gillespie, and Sam Adam, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Lynda A. Peters, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Dennis Foskey, was charged with conspiracy to commit murder, solicitation to commit murder and possession of heroin with intent to deliver. Following a jury trial, he was acquitted of the conspiracy and solicitation charges, but convicted of possession of heroin with intent to deliver and sentenced to a term of 12 years. He contends on appeal that the trial court erred in refusing to suppress certain evidence obtained as the result of an allegedly illegal arrest. The defendant also contends that the court erred in granting the State's motion *in limine* based upon the marital privilege, thereby preventing the defense from using confidential communications between the defendant and his wife, the key prosecution witness.

The following testimony was presented at the hearing on the defendant's motion to suppress. On December 12, 1984, the defendant's wife, Sarah Foskey, was arrested for possession of heroin with intent to deliver. Shortly following her arrest, she agreed to become a police informer and supply information concerning narcotics traffick-

ing to Detective George Graham. Information supplied by Sarah Foskey led to four arrests on five separate occasions.

On December 7 or 8, 1985, Sarah Foskey contacted Detective Graham concerning a conspiracy to kill Graham. She stated that during a meeting at her home the defendant, Virginia Terrazas and Jose Terrazas had plotted to kill Graham and planned to hire a private investigator to determine Graham's home residence, the vehicles he drove and his personal habits. According to Sarah Foskey, the investigator would be hired by Michael Swerdlin, who had a civil suit pending against Graham, on the pretense of investigating the civil suit. Approximately five days later, Sarah Foskey contacted Graham and told him that a private investigator named Mitchell Williams had in fact been hired and that he was driving a cream-colored rental car. On December 15, she told Graham that the investigator had obtained the requested information concerning him.

On December 17, Sarah Foskey contacted Graham and told him that the defendant, Jose Terrazas, Virginia Terrazas and a man named Al had met at the Foskey residence and discussed killing Graham by putting an explosive device in his car. Sarah Foskey next contacted Graham on December 28 about a meeting that took place that day between the defendant, Jose Terrazas, Donald Elam and a man called Jerry. During this meeting there was an agreement to pay Jerry $25,000 to murder Graham. On December 30, Sarah Foskey identified a photograph of John Demopoulos as the man known to her as Jerry.

John Demopoulos was arrested at 11 p.m. on January 2, 1986, and admitted accepting a contract to kill Graham for $25,000. Between 11 a.m. and 12 p.m. on January 3, Sarah Foskey called Graham and informed him that Virginia and Jose Terrazas were back in town and were going to their residence at 3916 Cornelia. The police were aware of the fact that the Terrazases traveled frequently between Chicago and Georgia. In an effort to coordinate the arrests of all of the suspects involved in the conspiracy, certain officers went to the Terrazas residence while others proceeded directly to the apartment shared by the defendant and Sarah Foskey. No arrest warrants were obtained.

According to the testimony of the police officers who went to the defendant's apartment, a message was received at 1:45 p.m. that the Terrazases had been arrested. At that time, they went to the door of the defendant's residence and found it slightly open. They announced their office, heard a noise from within, then entered the apartment with their weapons drawn. They found the defendant in the bath-

room, took him into the living room and handcuffed him. At that time the defendant was advised of his constitutional rights.

Sarah Foskey then entered the apartment and signed a consent form allowing the police to search the apartment. A short time later the defendant also signed a consent form. The police searched the apartment and found a quantity of heroin hidden in the bathroom. The defendant made a statement admitting that the heroin belonged to him.

According to the defendant, he was seated on the toilet when the police officers entered the bathroom and pointed guns at his head. He signed the consent-to-search form only because Sarah Foskey had signed one first. The defendant stated that he was not advised of his constitutional rights.

At the conclusion of the hearing, the trial court found that exigent circumstances existed which justified the officers' warrantless arrest of the defendant in his home. The court also found that the defendant's consent to the search of his home was made voluntarily.

Prior to trial, the State made a motion *in limine* to preclude the defense from using certain letters written by Sarah Foskey to the defendant while he was in jail. The defense made an offer of proof that Sarah Foskey made written and oral statements to the defendant while he was in jail which were inconsistent with the statements she made to the police. Specifically, she stated that she had fabricated the "whole story" against the defendant and the Terrazases in order to avoid going to jail on the drug charges pending against her. The trial court granted the motion *in limine* on the grounds that the communications from Sarah Foskey to the defendant fell within the marital privilege and could not be used at trial over her objection.

The defendant first contends that the trial court erred in determining that exigent circumstances existed which justified the warrantless arrest in his home. He argues that his consent to search and his statement that the drugs belonged to him resulted directly from the illegal arrest and that both the statement and the heroin recovered during the search should have been suppressed.

■■ ■ Absent exigent circumstances, the fourth amendment prohibits police from making a nonconsensual entry into a suspect's home for the purpose of making an arrest without a warrant. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543.) The Illinois Supreme Court has established general guidelines to be used in determining whether exigent circumstances exist. (*People v. White* (1987), 117 Ill. 2d 194, 512 N.E.2d 677, *cert. denied* (1988), 485 U.S. 1006,

99 L. Ed. 2d 698, 108 S. Ct. 1469.) These are: (1) whether the offense has been recently committed; (2) whether there was any unjustified or deliberate delay on the part of the police during which time a warrant could have been obtained; (3) whether the offense committed was a grave one, particularly a crime of violence; (4) whether the suspect is reasonably believed to be armed; (5) whether the police acted upon a clear showing of probable cause; (6) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (7) whether the police have strong reason to believe that the suspect is on the premises; and (8) whether the police entry, though nonconsensual, is made peaceably. (*White*, 117 Ill. 2d at 216-17, 512 N.E.2d at 685.) The court cautioned that the guiding factor in assessing the officers' decision to proceed without a warrant is reasonableness, and that each case must be decided on the facts presented based on the information known to the officers at the time they acted. *White*, 117 Ill. 2d at 216, 512 N.E.2d at 685.

■ Applying these factors to the case at bar leads us to conclude that the defendant's warrantless arrest in his home was not justified by exigent circumstances. The officers had knowledge of the continuing conspiracy to kill Graham for approximately one month before the defendant's arrest. Although the crime of conspiracy to commit murder is a grave offense, the officers had no reason to believe, based on the facts known to them, that the defendant was armed. Given the fact that the intended victim was known to them, there was little chance that the object of the conspiracy could have been accomplished had the officers taken the time to procure an arrest warrant.

The State seeks to support the finding of exigent circumstances based on the officers' decision to coordinate the arrests of all of the defendants. It argues that once the Terrazases had been arrested, the defendant could have been "tipped off" and might have fled if not swiftly apprehended. However, the police may not through their own actions create the exigent circumstances used to justify the arrest. (*People v. Wilson* (1980), 86 Ill. App. 3d 637, 643, 408 N.E.2d 988.) The record shows that the police had knowledge of the conspiracy as early as December 8, 1985, and that John Demopoulos confessed his part in the crime on the evening of January 2, 1986. The police at that time had corroboration of the information given to them by Sarah Foskey. Sarah Foskey informed Officer Graham a few hours before the defendant's arrest that the Terrazases were in town and headed toward their Chicago residence. However, there is no indication that the Terrazases were aware of the officers' knowledge of their part in the conspiracy or that they would attempt to flee the

jurisdiction during the time necessary for the officers to procure warrants for the arrests of all of the defendants. Under these circumstances, we believe that the warrantless arrest of the defendant in his home was illegal and that his statement that the heroin found there belonged to him resulted directly from the illegal arrest and should therefore have been suppressed.

■ We do not agree, however, that the heroin itself should have been suppressed. Although the defendant's consent to search may have been tainted by the illegal arrest, the record shows that Sarah Foskey also consented to the search. Both the defendant and Sarah testified that they lived together in the apartment. Where two persons have equal access to or control of the premises, either may consent to a search and the evidence seized may be used against either. (*People v. Bolden* (1987), 152 Ill. App. 3d 631, 635, 504 N.E.2d 835.) Therefore, it is our determination that the defendant is entitled to a new trial on the count charging him with possession of heroin with intent to deliver, at which his statement that the drugs belonged to him must be suppressed.

The next contention raised by the defendant is that the court erred in granting the State's motion *in limine* to prevent the defense from introducing into evidence and using for purposes of cross-examination certain letters written by Sarah Foskey to the defendant while he was in jail. The court ruled that the letters were protected by the marital privilege and could not be used at trial over the objection of Sarah Foskey. The defendant argues that the trial court's action violated his constitutional rights of confrontation and to compel witnesses on his behalf and, in addition, denied him due process of law. Because this issue is likely to arise upon retrial of the cause, we will address the defendant's claim of error.

■ Illinois law provides that "[i]n all criminal cases, husband and wife may testify for or against each other: provided, that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during marriage," subject to certain exceptions not pertinent here. (Ill. Rev. Stat. 1987, ch. 38, par. 155—1.) The privilege applies when the communications were intended to be of a confidential nature (*People v. Sanders* (1983), 99 Ill. 2d 262, 267, 457 N.E.2d 1241), and covers both oral and written communications from one spouse to another (*People v. Gardner* (1982), 105 Ill. App. 3d 103, 433 N.E.2d 1318). The spouse who made the communication must assert the privilege to keep the communication excluded from trial. (*People v. Gardner* (1982), 105 Ill. App. 3d 103, 433 N.E.2d 1318.) The privilege is based upon public pol-

icy considerations, specifically the recognition that private communications between a husband and wife perform a legitimate function in fostering marital harmony and should therefore be protected. See 81 Am. Jur. 2d *Witnesses* §148, at 188-89 (2d ed. 1976).

The defendant, while recognizing the legitimate public policy considerations supporting the marital privilege, argues that the statutory privilege must yield when confronted with a criminal defendant's right to confront and cross-examine the witnesses against him. In support of this position, the defendant cites *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, *People v. Di Maso* (1981), 100 Ill. App. 3d 338, 426 N.E.2d 972, and *Salazar v. State* (Alaska 1976), 559 P.2d 66.

Briefly, in *Davis v. Alaska*, the United States Supreme Court held that a criminal defendant's right to cross-examine and thereby discredit a key State witness by presenting facts showing bias was paramount to the public policy interest promoted by a State statute forbidding the disclosure of juvenile criminal records.

In *People v. Di Maso* (1981), 100 Ill. App. 3d 338, 426 N.E.2d 972, this court relied upon the rationale of *Davis v. Alaska* to hold that the defendants were denied their sixth-amendment right to effective cross-examination where the trial court granted a motion *in limine* barring the defense from cross-examining the key prosecution witness using psychiatric treatment records. The records were privileged under the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1979, ch. 91½, par. 810), which was intended to promote the State's interest in protecting confidential communications between a patient and therapist. The *Di Maso* court stated that "if the excluded evidence was relevant towards a particular attack on the credibility of a key State witness, then *Davis [v. Alaska]* dictates that the defendant's right to effective cross-examination prevails over any State interest in maintaining the confidentiality of psychiatric treatment." *Di Maso*, 100 Ill. App. 3d at 341-42, 426 N.E.2d at 974.

In *Salazar v. State* (Alaska 1976), 559 P.2d 66, a case similar to the instant cause, the Alaska Supreme Court was called upon to balance the State interest in protecting marital communications against the defendant's constitutional rights to confront the witnesses against him and to compel witnesses on his behalf. In *Salazar*, the defense sought to present evidence that Gary Tolen, a key witness in the defendant's murder trial, told his wife Carolyn Tolen that it was he and not the defendant who had killed the victim. The trial court ruled that the purported admission by Gary Tolen to his wife fell within the marital privilege and that the defense could therefore not produce evi-

dence of the statement at trial. The Supreme Court reversed the cause and remanded it for a new trial, concluding:

> "[T]he failure to allow Carolyn Tolen to testify effectively denied the defendant the ability to demonstrate the possible bias of Gary Tolen ***. When, as in *Davis* [*v. Alaska*] and this case, the defendant's right to confront effectively the witnesses against him by exploring their possible bias or prejudice is balanced against a rule based solely on policy grounds, the defendant's constitutional rights must prevail." *Salazar*, 559 P.2d at 78-79.

Legal commentators have also expressed the opinion that where a conflict arises between the exercise of a privilege based on public policy and a criminal defendant's constitutional right of confrontation, the constitutional right should control. McCormick, in his handbook on evidence, states that the purposes served by the privilege protecting marital communications, "while worthy and desirable, will not stand in the balance with the need for disclosure in court of the facts upon which a man's life, liberty or estate may depend." (McCormick, Evidence §86, at 173 (2d ed. 1972).) In accordance with this position, Rule 216(d) of the American Law Institute's Model Code of Evidence (1942) provides that the marital privilege does not apply in "a criminal action in which the accused offers evidence of a communication between him and his spouse." Model Code of Evidence Rule 216(d), at 156 (1942).

■ In the case at bar, the defendant sought to introduce evidence of and to cross-examine Sarah Foskey concerning certain letters she wrote to him in which she admitted fabricating the entire case against him in order to avoid going to jail on her own pending drug charges. While we acknowledge as valid the State's interest in protecting confidential communications between spouses, we believe that the defendant's rights to effective cross-examination and due process of law must prevail. For this reason, we conclude that on retrial the defendant should be allowed to introduce evidence of the letters in question and to cross-examine Sarah Foskey based upon the contents of those letters.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for a new trial consistent with the views expressed in this opinion.

Reversed and remanded.

JOHNSON and McMORROW, JJ., concur.