2022 IL App (2d) 200736-U
No. 2-20-0736
Order filed February 4, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-300 |
| DASHON LAMAR WARD, | ) ) | Honorable Ronald J. White, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant was proved guilty beyond a reasonable doubt of being an armed habitual criminal. His housemate testified that defendant kept a gun at her house and saw him handle it. Her testimony, which was corroborated in important respects, was sufficient for a conviction even though she was inconsistent on some points and was an admittedly heavy drug user during the relevant period.

¶ 2    Defendant, Dashon Lamar Ward, appeals from his conviction in the circuit court of

Winnebago County of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)),

contending that he was not proved guilty beyond a reasonable doubt. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 Defendant was indicted on several counts of first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2016)) and one count of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)). After the armed-habitual-criminal charge was severed from the murder charges (see 725 ILCS 5/114-8 (West 2016)), defendant opted for a bench trial on the armed-habitual-criminal charge.

¶ 5 The following facts were established at the bench trial. On January 3, 2016, at about 9:16 p.m., Detective James Gulley of the Rockford Police Department obtained from Cindy Veloz-Perez written consent to search her home. He did so because of a shooting that occurred earlier that day.

¶ 6 At about 10 p.m. that day, Detective Gulley and other police officers searched the home. Detective Gulley described the home as having a first floor, a second floor, and a basement. According to Detective Gulley, the basement was a common area. The house appeared to be a single-family dwelling, and there was no indication that any part of the house was a separate residence.

¶ 7 During the search, Detective Gulley found two guns on a shelf in the basement. One was an air gun, and the other was a TEC-9 with an extended magazine. The TEC-9 had one live 9-millimeter round in the chamber and one live round in the magazine. Also, during the search, Detective Gulley and other officers found, on the ground just outside the back door of the house, seven spent 9-millimeter casings and one live 9-millimeter round. Christina Davis of the Illinois State Police Crime Lab testified that the TEC-9 fired the spent casings. The search of the home also revealed cannabis and drug paraphernalia. Mail addressed to Mario or Marino Blackman was found on the first floor. No mail was found in the basement.

¶ 8     According to Detective Gulley, he met with Veloz-Perez on January 5, 2016, at the public safety building. He did not ask her to come to the public safety building; she came of her own volition. He showed Veloz-Perez a photograph of the TEC-9 and the air gun. When asked if he met with Veloz-Perez on January 4, 2016, Detective Gulley answered, "I don't recall, no."

¶ 9     Veloz-Perez testified that she rented the house 10 or 11 months before the search. In December of 2015, defendant was living with her. When asked if defendant was living with her full time, she explained that he was "off and on coming to the house." She added that his "stuff" and clothes were at the house but that "he wouldn't be home all the time at night." After January 3, 2016, defendant never came back to the house.

¶ 10    Veloz-Perez testified that she met with Detective Gulley on January 5, 2016. He showed her a photograph of two guns, and she identified one of them as a TEC-9. Defendant had shown her the TEC-9 four or five times. She stated that she was in her bedroom on the second floor sometime between 1 and 2 a.m. on January 3, 2016. After hearing noise on the first floor, she came downstairs and saw defendant talking with two men and three women. Defendant was showing the TEC-9 to the women. Asked further about January 3, 2016, Veloz-Perez testified that she awoke around 8:30 a.m. that day. However, when confronted with her written statement to the police that she awoke around 11:50 a.m. that day, Veloz-Perez stated that she must have fallen back to sleep and gotten up at 11:50 a.m. but could not really recall. When she woke, she found that "Milo"—defendant's and Veloz-Perez's mutual friend—was sleeping on a couch downstairs. Also present at the house on January 3, 2016, between 12 and 12:15 p.m., were Veloz-Perez's two children, their grandparents, their aunt, Veloz-Perez's niece, and a caseworker from the Department of Children and Family Services.

¶ 11    Veloz-Perez denied that the TEC-9 was in the house before defendant moved in; she had never seen the gun before she met defendant. Later, on redirect, she testified that defendant brought the TEC-9 into the house and usually kept it in the bedroom closet. Milo also had access to the bedroom. On New Year's Eve of 2015, defendant, a mutual friend, and Veloz-Perez fired the gun in the backyard of her house. The last time she saw the gun was on a shelf in the basement of her house on January 3, 2016.

¶ 12    On cross-examination, Veloz-Perez admitted that, when she signed the search consent form on July 3, 2016, she did not tell Detective Gulley that anyone else lived at the house. On that same date, she gave a written statement to the police. She claimed that she wrote in the statement that someone else lived at the house. However, when confronted with her January 3 and January 5, 2016, written statements to the police, Veloz-Perez admitted that she never said that defendant lived with her. Later, on redirect examination, she explained that she had referred in her January 3, 2016, statement to someone named "G" and that "G" was defendant.

¶ 13    Veloz-Perez admitted to injecting heroin three or four times a day for two or three years. According to Veloz-Perez, the last time she used heroin was January 2, 2016. However, she also testified that January 4, 2016, was the day she "stopped" using heroin.

¶ 14    After consenting to the search on January 3, 2016, Veloz-Perez went to her former sister-in-law's home. According to Veloz-Perez, Detective Gulley called her on January 4, 2016, and she arranged for him and other officers to meet her at her house. She went there to pick up some belongings. While there, Detective Gulley told her about the guns and other items found during the search. The conversation took place in the kitchen.

¶ 15    Veloz-Perez also admitted that she did not know defendant's name on January 3 and 5, 2016. She further acknowledged that neither when she first met with the police nor when she gave

her January 3, 2016, statement did she tell them about defendant having a gun. She could not recall whether it was January 4 or 5, 2016, when she first told the police that someone else lived with her. She did remember that, on the afternoon of January 5, 2016, she went with her mother, aunt, and aunt's husband to the police station to meet with Detective Gulley. According to Veloz-Perez, she and her mother met with Detective Gulley in an interview room. When Detective Gulley showed her a photo of a TEC-9, she told him that she had seen the gun at her house. She also told Detective Gulley that she last saw the TEC-9 in the basement of her house.

¶ 16    In finding defendant guilty, the trial court found "[l]ittle inconsistencies" in Veloz-Perez's testimony. The court considered Veloz-Perez's heroin use and that she was an addict. The court further considered Veloz-Perez's "ability and opportunity to observe, her memory, her manner while testifying, any interest she would have, any bias or prejudice she may have, and the reasonableness of her testimony in light of all the other evidence in the case." Although noting that she was a "little inconsistent in areas," and that she used drugs, the court found her to be "very, very credible [and] very, very believable." The court found that defendant actually possessed the TEC-9 when he showed it to others on January 3, 2016. The court also found that he constructively possessed the TEC-9.

¶ 17    After denying defendant's posttrial motion, the trial court sentenced him to 17 years in prison. Defendant, in turn, filed this timely appeal.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, defendant contends that we must reverse his conviction because it was based solely on the vague and inconsistent testimony of an incredible witness who was a heavy heroin user when, according to her testimony, she saw defendant possessing the TEC-9.

¶ 20    When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, our function is not to retry the defendant. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Rather, after viewing the evidence in the light most favorable to the prosecution, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* (citing *Jackson v. Virginia*, 443 U.S 307, 319 (1979)). In reviewing the evidence, we will not substitute our judgment for that of the trier of fact. *Sutherland*, 223 Ill. 2d at 242. The weight to be given the witnesses' testimony, the credibility of the witnesses, resolution of inconsistencies and conflicts in the evidence, and reasonable inferences to be drawn from the testimony are the responsibility of the trier of fact. *Id.* " 'It is sufficient if all the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt.' " *Id.* at 243 (quoting *People v. Hall*, 194 Ill. 2d 305, 330 (2000)). The testimony of a single witness, if positive and credible, is sufficient to convict, even though the defendant contradicts it. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 21    Where a finding of guilty depends on eyewitness testimony, a reviewing court must decide whether, in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004). The reviewing court must carefully examine the record evidence while bearing in mind that it was the fact finder who saw and heard the witnesses. *Id.* at 280. "Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Id.* A fact finder's decision to accept testimony is entitled to great deference but is not conclusive and does not bind the reviewing court. *Id.*

¶ 22    To convict a defendant of being an armed habitual criminal, the State must establish that he knowingly or intentionally possessed a firearm after being convicted of at least two qualifying

offenses. 720 ILCS 5/24-1.7(a) (West 2016). Criminal possession may be either actual or constructive. *People v. Padilla*, 2021 IL App (1st) 17132, ¶ 59. To prove actual possession, the evidence must show that the defendant exercised physical dominion over the item in question. *People v. Alexander*, 202 Ill. App. 3d 20, 24 (1990). To prove constructive possession, the State must establish that the defendant had knowledge of the weapon's presence and had immediate and exclusive control over the area where the weapon was found. *Padilla*, 2021 IL App (1st) 171632, ¶ 59. Knowledge and possession are questions of fact to be resolved by the trier of fact, whose findings will not be disturbed unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates reasonable doubt of guilt. *Id*. Evidence of constructive possession is often proved entirely by circumstantial evidence. *Id.* ¶ 60.

¶ 23    Here, the primary evidence that defendant possessed the TEC-9, either actually or constructively, was the testimony of Veloz-Perez. In attacking her testimony to show that there was insufficient evidence to prove him guilty of possessing the TEC-9, defendant points to inconsistencies in her testimony and her heavy use of heroin during the period in question.

¶ 24    We turn first to the inconsistencies in Veloz-Perez's testimony. Although she was inconsistent about what happened on certain dates regarding her encounters with the police, these discrepancies were minor, as the trial court found. Moreover, her testimony was lucid and detailed as to her recollection of defendant's connection to the TEC-9. She recalled an incident in which she, defendant, and a mutual friend fired the gun outside the back door of her house just a few days before the police seized the gun. That testimony was corroborated by the officers' discovery, outside the back door, of numerous spent shell casings fired from the TEC-9. Veloz-Perez further recalled going downstairs early on January 3, 2016, and seeing defendant showing the TEC-9 to three women. She also testified that defendant kept the gun in the bedroom most of the time but

last saw it on a shelf in the basement. This was corroborated by Detective Gulley's testimony that he found the TEC-9 on a shelf in the basement. Although Veloz-Perez was inconsistent on some minor points, her testimony was detailed and clear regarding the material issue of defendant's possession of the TEC-9.

¶ 25    We next address the issue of Veloz-Perez's heroin use. Evidence of a witness's habitual drug use or addiction is significant in evaluating credibility (*People v. Adams*, 259 Ill. App. 3d 995, 1004 (1993); *People v. DiMaso*, 100 Ill. App. 3d 338, 342 (1981)) because habitual drug use is particularly probative of the witness's ability to perceive and recall accurately (*DiMaso*, 100 Ill. App. 3d at 342).

¶ 26    Here, there is no doubt that Veloz-Perez was a heroin addict during the time in question. She testified that she used heroin three or four times per day for several years. However, that does not conclusively show that Veloz-Perez could not perceive or recall that defendant brought the TEC-9 into the house and what he did with it after that. Indeed, she had detailed recall of where he kept it, his showing it to the women, and his firing it on New Year's Eve. As discussed, her testimony that she last saw the TEC-9 on a shelf in the basement was corroborated by Detective Gulley's testimony. Her testimony that defendant fired the gun was corroborated by the numerous shell casings from the gun found just outside the home's back door. The trial court carefully considered Veloz-Perez's heroin use yet found that she was a very credible witness.

¶ 27    The record does not compel the conclusion that no reasonable person could have accepted as credible Veloz-Perez's testimony. Based on her positive and credible testimony, there was sufficient evidence to prove beyond a reasonable doubt that defendant possessed the TEC-9. Thus, he was properly found guilty of being an armed habitual criminal.

¶ 28                                III. CONCLUSION

¶ 29   For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 30   Affirmed.