THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD T. JOHNSON, Defendant-Appellant.

Second District   No. 78-427

Opinion filed September 14, 1979.

Mary Robinson and David S. Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Following a jury trial the defendant, Richard T. Johnson, was convicted of armed robbery and sentenced to a term of not less than 21 years nor more than 63 years imprisonment. The defendant had been

indicted on charges of attempt murder and aggravated battery as well as on the armed robbery charge. However, the State advised the court at the commencement of trial that it was "proceeding only" on the armed robbery charge. The defendant contends in his appeal that, nevertheless, the State was permitted to introduce evidence of the attempt murder and aggravated battery and that he was thereby deprived of a fair trial when prejudicial testimony and prejudicial argument as to a shooting following the robbery was elicited without objection by his allegedly incompetent defense counsel.

The direct evidence against the defendant is primarily found in the testimony of an accomplice, Carl Loberg. Loberg testified that on the date of the crime, December 27, 1977, during a party at the defendant's home, he and defendant had a private conversation concerning the commission of a robbery; that they borrowed the car of Fritzie McPeake, who was at the party, at about 10 p.m. to pick up a shotgun at Jim O'Neal's house. They told Mrs. O'Neal that they wanted the gun for skeet shooting. They then went to Don Christoffel's house, where only Loberg went in and picked up a pellet gun. They left there at about 10:45. He and defendant then drove to Weiland's Tavern and parked one-half to three-quarters of a block away. Before entering, Loberg, who was wearing a hooded coat, put on a knit cap to cover his face while defendant pulled a nylon stocking over his head. Loberg said that he had possession of the pellet pistol while defendant possessed the shotgun. He further related that defendant, holding the shotgun ready at his hip, yelled "freeze" while Loberg walked to the bar and took $300 which the bartender, Leon Wilkerson, handed to him from the register. He related that defendant was asking people to empty out their pockets but that he told defendant to "forget it" and ran out, the defendant behind him.

Loberg's further testimony, although without objection, reaches the area which defendant claims is error. Loberg said that as he was getting into the car he heard a shot, turned and saw defendant standing outside the closed tavern door, with his gun at his shoulder; and that when defendant got to the car he told Loberg that "he thought he'd shot somebody."

The witness further testified that they then went to Christoffel's home where they left the shotgun; that he and defendant divided the money and that they picked up the shotgun the next day and brought it to O'Neal's house. (O'Neal later testified that he examined the gun and noticed that it had been fired.)

Leon Wilkerson testified for the State and corroborated the circumstances in the tavern as related by Loberg. He placed the time when the robbers entered as between 10:45 and 11 o'clock. He further testified without objection that when the men left, the door was shut and

that about two seconds later a shotgun blast came through the door, striking the bartender's cousin, Gilbert Cornell, Jr. The following questions and answers appear:

"Q What did your cousin do then after being stricken?

A He fell down onto the floor. He was sitting on the stool, bar stool.

Q Have you seen your cousin since this?

A Yes, I have.

Q What is his condition?

A He can't walk. He's paralyzed. And he's—he's in Chicago now."

The prosecutor also exhibited a photo to the witness showing blood stains on the floor where the patron fell and questioned with regard to that. Also, the witness testified that the paralysis was from the waist down.

Another bartender, Lonnie Wilkerson testified, substantially corroborating Leon Wilkerson's testimony. He placed the time of the robbery at 10:45 or 10:50. This witness was also questioned:

"Q Now, tell me what, if anything happened immediately after he left, the taller subject?

A After they left, not more than a couple seconds after, there was a shotgun blast and it struck my cousin in the back.

Q And what happened to your cousin, did he fall?

A Yes, he was—he fell quite hard.

Q Have you seen him lately?

A Not in the last couple weeks, three weeks.

Q Can you describe for us his condition at your last seeing him?

A Paralyzed from the waist down."

Neither Leon nor Lonnie Wilkerson nor any other witness identified the defendant at trial. Lonnie Wilkerson testified that he had identified a tan jacket owned by the defendant as one worn by Johnson that night. However, during grand jury testimony the police officer who investigated the shooting said that Lonnie had told him, "It looked similar to the jacket * * *."

Karen Christoffel testified that when the defendant and Loberg returned to her home, defendant was crying and said that he thought he had shot someone. However, during her grand jury examination she said that "Rick Loberg" was crying. She also said that she did not hear all of the conversation that evening; to another question "Did you hear any of it" the record shows she shook her head, indicating that she did not. She corroborated Loberg's story that the next day Loberg told her that he had gone with Johnson to hold up a tavern and that Johnson had fired a shot and hit somebody.

The defendant testified that he was never alone with Loberg during

the evening of December 27, never discussed a robbery, and had no discussion about going with Loberg. He also denied any knowledge of the robbery and testified that, at the time, he was drinking in the Happy Corner's Bar. The bartender at that bar testified that defendant came in to the place at approximately 10:30 or 10:45 p.m. and stayed approximately 1½ hours, leaving at approximately 12 p.m. On rebuttal a police officer testified that the witness had told him she could not pinpoint the day the defendant was in the bar.

Jeanne Saintey, a friend of defendant's, testified that she was at the Johnson party and that defendant and Loberg were not alone during the evening. She also placed the time of leaving the Johnson house at about 9:30 rather than 10 p.m. as Loberg had testified.

In closing argument the prosecutor on several occasions discussed the shotgun blast and the injuries to Cornell, stating "[a]nd the testimony from the stand was that he is paralyzed to this day." Also, in closing argument the prosecutor's last sentence was:

> "I suggest that there is no reasonable doubt that the Defendant is guilty, that he is the man who shot through that door and paralyzed that boy, and I ask you to go into the jury room and return a verdict of guilty as charged."

■■■ Initially, we reject the State's claim that the defendant has waived any issue relating to the evidence of the shooting because his counsel failed to object at any point in the trial or thereafter, citing *People v. Pickett* (1973), 54 Ill. 2d 280, 282. Because of the clearly prejudicial nature of the testimony, and also keeping in view the inexplicable failure of the defendant's counsel to object, we believe that justice requires that we review the issue raised under the doctrine of "plain error." Ill. Rev. Stat. 1977, ch. 110A, par. 615(a); see also *People v. McMillan* (1970), 130 Ill. App. 2d 633, 637.

There can be little question of the prejudicial effect of evidence of the shooting through a closed door after the purpose of an armed robbery was apparently accomplished and the infliction of a severe injury to a patron from which he remains paralyzed from the waist down.

■■ However, we also reject defendant's argument that the fact of the shooting itself was not admissible based on the reasoning that the armed robbery had been completed and the evidence was probative only of an unrelated crime. The shooting through the door was immediately after the exit by one of the armed robbers. The jury could be permitted the reasonable inference that it was to discourage pursuit and to facilitate escape and that it was part of the continuous criminal action involved in the charge of armed robbery. Moreover, since defendant testified to an alibi, the shooting, connected with the testimony that a shotgun had been borrowed that evening and returned after the time of the robbery with

evidence that it had been fired, provided circumstantial evidence that this defendant was present at the scene of the crime where the gun was used. See, *e.g., People v. Mikka* (1955), 7 Ill. 2d 454, 461.

■■ ■ If the prosecutor had stopped at the point where the evidence showed the shooting through the door we would not find reversible error in the circumstances of this case. But the further proof of the nature of the debilitating injury to the patron and testimony as to his current condition of paralysis, together with the emphasis of these facts in the prosecutor's argument to the jury, when the charges of attempt murder and aggravated assault were not being tried, appears not only to be severely prejudicial but without legal sanction. As noted in *People v. Pendleton* (1977), 52 Ill. App. 3d 241, 249:

> "Where, however, in the commission of the other crime, it is some (but less than all) of the accused's behavior which is probative rather than the actual commission of a crime itself, the testimony must be tailored so that the jury is apprised only of the behavior and not the commission of a crime. (*People v. Butler* (1974), 58 Ill. 2d 45, 317 N.E.2d 35; *People v. Brown* (1972), 3 Ill. App. 3d 1022, 279 N.E.2d 765. See also *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450.) Furthermore, a prosecutor may not indicate during argument that such behavior constituted the commission of a crime. [Citation.] Where evidence of another crime has been erroneously placed before the jury, the State bears the burden of affirmatively showing that the error was not prejudicial."

See also *People v. Romero* (1977), 66 Ill. 2d 325, 330. *Cf. People v. Baptist* (1979), 76 Ill. 2d 19, 27.

Even if the crimes of attempt murder or aggravated assault had been properly before the jury it would have been prejudicial error to bring to the jury the evidence of the blood in the tavern and the evidence of the patron's current condition of paralysis. (*People v. Nickolopoulos* (1962), 25 Ill. 2d 451.) In *Nickolopoulos*, the court noted that, where a deadly weapon was used, questions concerning an assault victim's condition in the hospital, evidence of blood, and the extent of his injuries were erroneous and "of such a nature as to be highly prejudicial to the defendant," requiring the conclusion that the defendant did not receive a fair trial. 25 Ill. 2d 451, 454. See also *People v. Cunningham* (1966), 73 Ill. App. 2d 357, 364-65.

■■ The State argues that the testimony as to the paralyzed victim was independently admitted to show force and intimidation as an element of armed robbery or to explain why witnesses were willing to come forward. This does not seem persuasive under the circumstances. First, there was other proof that the shotgun was used in the armed robbery, and there was no evidence that it was used to accomplish the escape or to

prevent retrieval of the fruits of the armed robbery (compare *People v. Chambliss* (1966), 69 Ill. App. 2d 459, 466). Further, the question as to why the accomplice was willing to testify (he was asked that question by the prosecutor without objection and said "[b]ecause a boy was shot") is of doubtful relevancy; and would not have explained why it was necessary to dwell on the paralyzed patron.

■■■ We cannot agree with the State's alternative argument that the error, if any, was harmless beyond a reasonable doubt since the jury could not have reasonably found the defendant not guilty. We are unable to reach that conclusion on this record. The defendant was not identified by anyone except the accomplice. While the testimony of one witness, even that of an accomplice, may be sufficient to convict, such testimony is "subject to grave suspicion and should be acted upon with great caution." (See, *e.g., People v. Norwood* (1973), 54 Ill. 2d 253, 256; *People v. Maggio* (1927), 324 Ill. 516, 529). Parenthetically, we note that it is conceded in the briefs that the accomplice Loberg has pled guilty to a lesser offense of robbery, although this was not part of the record before the jury. The evidence shows that Loberg borrowed the gun used in the shooting, returned it to the owner, and it is solely shown in Loberg's testimony and in his statements to others that defendant used it in the armed robbery. We find appropriate:

> " 'We have heretofore had occasion more than once to condemn the conduct of the State's counsel in asking improper questions or making uncalled-for remarks which had no bearing on the guilt of the accused of the crime they were being tried for but for the sole purpose of prejudicing them in the minds of the jury, * * *. If the evidence of guilt is such that the State's Attorney believes a conviction is warranted it is his duty to try to secure a verdict of guilty, but it is never his duty to resort to unfair and improper methods to secure a conviction. His duty is to present to the jury, both in the introduction of the testimony and in argument to the jury, the evidence of the State upon which he relies, and this can be effectively done in accordance with the rules of law.' " *People v. Jackymiak* (1943), 381 Ill. 528, 536-37.

We must conclude that the defendant was denied his right to a fair trial by the improper admission of evidence and the argument of the prosecutor. The judgment of the trial court is therefore reversed and the cause remanded for a new trial. In view of this conclusion we do not reach defendant's further independent argument for reversal based on the claim of the incompetency of trial counsel.

Reversed and remanded.

LINDBERG and NASH, JJ., concur.