THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WAYNE COLLETTE, Defendant-Appellant.

Fourth District   No. 4—90—0819

Opinion filed August 16, 1991.

George F. Taseff and Harold M. Jennings, both of Bloomington, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

After a jury trial, defendant was convicted of criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13), and sentenced to 12 years' imprisonment. He appeals, alleging (1) his right to effective cross-examination was violated by restricted cross-examination of the victim as to her alleged consumption of up to one-half gallon of wine per day for the two years prior to the date of the offense; and (2) the trial court abused its discretion in allowing testimony that defendant was holding a knife after the offense occurred.

On January 7, 1990, the victim, J.S., was working as a waitress at the Elite Diner in Urbana, Illinois. About 1 p.m., defendant entered the diner with a friend. J.S. knew the defendant because he had been a regular patron of the diner. J.S. hinted that she would like a ride home because she had ridden her bicycle to work. Defendant left the diner, but then telephoned J.S. to tell her he would give her a ride home and returned to pick her up. After putting the bicycle in his car, defendant drove J.S. to her residence. They both went inside, where J.S.'s roommate was present. J.S. changed her clothes and then asked her roommate if there was any beer, but her roommate reminded J.S. that J.S. drank all the beer the previous evening. J.S. then asked defendant to give her a ride to buy a six-pack of beer. Defendant took J.S. to Caroline's bar, where they remained for three or four hours drinking beer and playing pool. After advising defendant several times that she wanted to go home, J.S. asked the bartender to call a cab and purchased a 12-pack carton of beer. When J.S. informed defendant that she had called a cab, defendant said he would take her home and told the bartender to cancel the cab. J.S. paid for the 12-pack, and both she and defendant left in defendant's car.

Upon exiting the parking lot, defendant turned in the opposite direction from J.S.'s residence, and J.S. told him to turn around. J.S. testified that when defendant drove to a rural area and stopped the car, she got out of the car and told defendant she was walking home, whereupon defendant got out of the car, struck her in the face, and

forced her back into the car. He then unzipped his pants and forced her head down so his penis entered her mouth "for a few seconds." J.S. managed to get out of the car and she began running. Defendant caught up with J.S., and grabbed her and tore off her shirt, knocking her to the ground. She kicked at defendant and tried to get away four separate times but defendant kept knocking her down. At that point, J.S. saw defendant standing over her with a knife so she kicked him and sent him "flying through the air." She then got up and ran toward the lights of a farmhouse.

At about 8:30 p.m. on January 7, 1990, Mrs. Neva Anderson responded to a knock at her back door. There she saw J.S., who was naked from the waist up, appeared nervous and shaking, with her nose bleeding and her eyes puffy. The sheriff was called and deputies located defendant's car on the side of the road. Scattered in and around the car were the victim's torn clothing, 10 unopened cans of beer, and an address book, compact, and change. Defendant was nowhere to be found.

Defendant's testimony substantially paralleled the victim's up to the point where he stopped the car in the rural area. According to defendant, he attempted to kiss J.S. but she tensed up and bit his thumb when he tried to turn her head. Defendant then exited the car to "relieve" himself and next saw J.S. standing outside the car. When he approached her and put his arms around her to ask what was wrong, she pushed him into a ditch and kicked him in the head as he tried to get up. He grabbed her sweatshirt to stop her from kicking and they both fell to the ground. He let her up and she continued kicking him in the head until he lost consciousness. Defendant testified that when he awoke, he walked back to Champaign and called his girlfriend, who picked him up about 1:40 a.m. Defendant and his girlfriend then went to the police station.

I

The basis of defendant's first claim, the alleged restriction of his right to effectively confront and cross-examine his accuser for the purpose of impeaching her credibility, rests on the following exchange during cross-examination of the victim:

"Q. [Defense counsel:] As a matter of fact, you, in April of this year you described—in looking back at your drinking pattern, you indicated you would consume as much as a half a gallon of wine per day; is that a fair statement?

A. [J.S.:] No."

The State's objection was sustained, and a side-bar conference was held (which is not part of the record on appeal (see 134 Ill. 2d Rules 323(c), (d))).

Defendant's motion for a new trial, however, stated his offer of proof for impeachment of the victim based on information contained in an alcohol evaluation report on the victim prepared by the Koala Center in Lebanon, Indiana, three months after the offense, and which was not in evidence at trial. A portion of that report indicated: "Over the last two years, she has been [drinking] up to one-half gallon of wine per day. Most of her drinking is done at home alone ***. She admits to blackouts." Prior to trial, the judge had received and reviewed the report *in camera*, and in accordance with counsel's request, had released same to assist in the preparation of the case.

■ Defendant claims that this restriction on his ability to impeach the credibility of the witness as to her prior consumption habits was constitutional error of the first magnitude and amounts to reversible error, citing *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, and *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9. However, the scope of cross-examination is not unlimited; the court may impose restrictions based on concerns for harassment, prejudice, confusion of the issues, or interrogation that is only marginally relevant. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 89 L. Ed. 2d 674, 106 S. Ct. 1431.

■ The focus under the confrontation clause is not on the limitation placed upon a cross-examination, but whether the jury has been made aware of adequate facts to determine if the witness is worthy of belief. (*People v. Hines* (1981), 94 Ill. App. 3d 1041, 419 N.E.2d 420.) The reviewing court must look to what was allowed rather than what was prohibited. *People v. Lindgren* (1982), 111 Ill. App. 3d 112, 119, 443 N.E.2d 1129, 1135.

The testimony of the victim indicates that substantial facts were elicited to enable the jury to assess her credibility. At trial, the 33-year-old victim, J.S., testified that during the three or four hours she was with the defendant at Caroline's bar, she consumed eight or nine beers. She admitted being drunk when she left the bar with defendant; she acknowledged that in the past she had consumed a lot more than eight or nine beers. She also admitted to being an alcoholic. On cross-examination, the witness again stated she had a problem with alcohol and had sought professional treatment. The witness testified that (1) she drank on an everyday basis, (2) she had experienced blackouts caused from drinking alcohol, and (3) she has no recollection of events that occur during a blackout. She further stated that

while at home on the night before the occurrence, she drank all her roommate's beer.

Defendant cites *People v. McGuire* (1960), 18 Ill. 2d 257, 163 N.E.2d 832, and *People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 96, for the view that intoxication or alcoholism are permissible areas of impeachment for purposes of attacking a witness' credibility. In those cases, however, the relevance of evidence of intoxication or alcoholism was confined to the time of the event about which the witness testified. Additionally, the issue in both cases was not one of confrontation but whether the witness' intoxication rendered him incompetent and untrustworthy as a witness. Citing to a legal treatise, the *Davis* court noted that "even habitual intoxication does not in itself incapacitate a person offered as a witness." *Davis*, 43 Ill. App. 3d at 614, 357 N.E.2d at 104.

In *People v. Di Maso* (1981), 100 Ill. App. 3d 338, 343, 426 N.E.2d 972, 975, the court noted: "Unlike the inferences which may be drawn from the fact of drug addiction, the fact of alcoholism is not probative of the witness' perceptual abilities at any given point in time. Where the proffered evidence is only that the witness is an alcoholic, it is doubtful whether it is a relevant matter for cross-examination." The *Di Maso* court went on to note that evidence of alcohol-induced blackouts, however, is admissible as probative of a witness' sensory capacity when the proffered evidence shows the witness' alcoholism causes blackouts brought on by drinking, and the witness was drinking near the time of the events of which he testifies. (*Di Maso*, 100 Ill. App. 3d at 343, 426 N.E.2d at 975.) That court concluded that the jury should have heard evidence that drinking triggered blackouts in the witness.

In contrast to *Di Maso*, J.S. not only admitted her alcoholism but also admitted that she experienced blackouts caused by alcohol consumption and that she had been drunk at the time of the offense. Furthermore, the defense put on an expert witness as to the meaning and effect of blackouts:

> "A. [Mark Holley:] Under the influence of alcohol, it's when the alcohol hits the brain, has kind of a shotgun effect on the brain and can produce memory lapses while the person is still functioning, sometimes doing their job, and they have no recollection of what was happening. It's not passing out. It's while the person is still awake and functioning.
>
> ***

A. [Holley:] Oftentimes they will piece together bits of information they have gained or fabricate to cover up the blackout.

\*\*\*

A. [Holley:] \*\*\* [And] to get rid of the, or to overcome the sense of shame and guilt associated with memory lapse."

Therefore, the jury had before it not only an explanation of the effect of the blackout, but also the amount and type of alcohol the victim had consumed immediately prior to the offense, the fact she was drunk, and the fact she had experienced alcohol-induced blackouts in the past, all of which impacted her credibility. Nevertheless, defendant claims that because of the limitation on his cross-examination of J.S. as to the type and quantity of alcohol she consumed on other occasions, he was prevented from establishing that prior levels of consumption, or consumption habits, have the equivalent effect on witness credibility as does drug addiction (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267), mental instability (*People v. Lindsey* (1979), 73 Ill. App. 3d 436, 392 N.E.2d 278), and habitual glue sniffing (*People v. Stalions* (1986), 139 Ill. App. 3d 1033, 488 N.E.2d 297). In *Stalions*, the defendant attempted to impeach the witness with evidence of her habitual glue sniffing. Defendant's offer of proof included expert testimony as to the adverse mental effects of glue sniffing and testimony by other witnesses as to the mental deterioration of the witness during the period she sniffed glue. In contrast, the defendant at bar submitted no offer of proof as to the present mental effects of prior alcohol consumption habits or the relevance of such evidence as a predictor of blackouts.

Defendant alleges that the restriction on cross-examination as to the witness' past consumption of up to a half gallon of wine per day denied him the opportunity to fully and effectively present his theory that the witness may have experienced an alcohol-induced blackout on the night of the alleged offense. However, the court's ruling on this limited issue, restricting defendant's attempts to impeach the witness with the evaluation report, did not prevent defendant from questioning J.S. as to the frequency or circumstances of her admitted blackouts, how recently one had occurred, or whether, in fact, she experienced a blackout on the night in question; nor did it otherwise impinge on his ability to present his defense. The limited restriction on cross-examination at best foreclosed inquiry only as to the tangential point that the victim had consumed a half gallon of wine at some time either prior or subsequent to the offense.

Determinations as to admissibility of evidence lie within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v. Ward* (1984), 101 Ill. 2d 443, 455-56, 463 N.E.2d 696, 702.

The facts testified to by the victim were more than adequate to allow the jury to determine her credibility and defendant failed to present any offer of proof to demonstrate the relevance of further cross-examination as to the witness' past consumption habits. The latitude to be allowed on cross-examination and rebuttal is a matter within the sound discretion of the trial court, and a reviewing court should not interfere unless there has been a clear abuse of discretion resulting in manifest prejudice to the defendant. *Collins*, 106 Ill. 2d 237, 478 N.E.2d 267.

When it appears from the entire record that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, as is apparent from the facts in this case, no constitutional question arises merely because defendant has been prohibited on cross-examination from pursuing other areas of inquiry. (*People v. Hines* (1981), 94 Ill. App. 3d 1041, 1048, 419 N.E.2d 420, 426.) On the facts elicited at trial, this standard has been met.

## II

Defendant next argues the victim's testimony that she observed the defendant holding a knife only after commission of the offense was improperly admitted because such testimony was irrelevant to the offense charged and constituted evidence of other crimes resulting in manifest prejudice to him.

The trial court admitted the witness' testimony on the basis that "the presence of the knife is a part of the total transaction that goes to show force and the conduct of the defendant." The general rule is that it is error to admit weapons into evidence when the weapon was neither used in the commission of the offense nor sufficiently connected to it. (*People v. Yelliott* (1987), 156 Ill. App. 3d 601, 509 N.E.2d 111.) While no weapon was admitted in this case but only the victim's testimony that she saw defendant holding the knife as he stood over her, we will examine the testimony pursuant to the general rule to determine whether the knife was sufficiently connected to the crime. See *People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528.

The State argues that even though the knife was not observed by the witness until after the sexual assault had occurred, that testimony was intertwined with and a part of the continuing

narrative of the circumstances attendant to the sexual assault, which offense began with defendant's punching the victim in the face and forcing her into the car prior to the sex act, and concluded when and as it did because the victim escaped to the farmhouse. The State points out that if testimony regarding the knife was in fact irrelevant to any material fact or proposition to prove the offense charged, all of the other testimony regarding events both prior and subsequent to the sex act, including the defendant's tearing off the victim's clothing and knocking her to the ground four different times, also would have to be excluded as similarly irrelevant to the offense charged. When facts concerning uncharged criminal conduct are all part of a continuing narrative which concerns the circumstances attending the entire transaction, they do not concern separate, distinct, and unconnected crimes. (*People v. Marose* (1957), 10 Ill. 2d 340, 343, 139 N.E.2d 735, 736.) Evidence of other crimes is admissible "if such evidence is intertwined with the offense charged." (*People v. Garrison* (1986), 146 Ill. App. 3d 592, 593, 496 N.E.2d 535, 536.) In *People v. Johnson* (1979), 76 Ill. App. 3d 147, 394 N.E.2d 919, testimony as to a shotgun blast fired through the door of a tavern immediately following a robbery was admissible as evidence of the continuous criminal action involved in the charged offense, armed robbery. Analogously, we find the victim's testimony that she saw the defendant holding a knife as he stood over her after the sexual assault occurred was properly admissible as part of the continuing narrative of the circumstances attendant to the sexual assault.

For the foregoing reasons, we affirm the decision of the circuit court of Champaign County.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.