THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL L. THOMPSON, Defendant-Appellant.

Fourth District   No. 4—04—0636

Opinion filed September 14, 2005.

Daniel D. Yuhas and Kara M. Craig, both of State Appellate Defender's Office, of Springfield, for appellant.

Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People.

JUSTICE TURNER delivered the opinion of the court:

In December 2003, the State charged defendant, Michael L. Thompson, with aggravated battery (720 ILCS 5/12—4(b)(1) (West Supp. 2003)) and unlawful use of weapons (720 ILCS 5/24—1(a)(2) (West 2002)). After a May 2004 trial, a jury found defendant guilty as charged. In June 2004, the trial court sentenced defendant to 42 months' imprisonment for aggravated battery to run consecutive with 300 days' imprisonment for unlawful use of weapons.

Defendant appeals, asserting he is entitled to a new trial because of (1) the admission of prejudicial other-crimes evidence and (2) his failure to receive effective assistance of trial counsel. We affirm.

## I. BACKGROUND

On December 24, 2003, defendant held a party at his apartment that began in the afternoon. Mandy Frazier, who lived across the hall from defendant, was also having a party, and people were going back and forth between the two apartments all evening. Around 11:30 p.m., an incident occurred between defendant and Molly Crow. That incident led to an altercation between defendant and Ryan Parrish involving a knife, and Parrish sustained three knife wounds. On December 30, 2003, the State charged defendant with aggravated battery and unlawful use of weapons based on the knife incident.

At the May 2004 jury trial, Parrish testified he was 19 years old at the time of the incident and was drinking at the party. Around 11:30 p.m., Parrish was sitting on a couch in defendant's living room when he heard "a loud boom sound" over the music that was similar to a sound that would come from "kicking a dryer." He then saw Crow crying. She stated defendant had pushed her head, and it hit the stove. At that point, everyone left defendant's apartment and went over to Frazier's.

Upon realizing he left his sweatshirt and coat in defendant's apartment, Parrish returned to defendant's apartment to retrieve his clothing. As he was leaving, he observed defendant, Brian Vandenbrink, and James Bates having a heated discussion in the hall. Vandenbrink returned to Frazier's apartment, and Parrish continued to listen to Bates and defendant. Parrish heard defendant say something that "set him off," and Parrish called defendant a "crazy F'er." Defendant replied, "[w]ell, I have something for you," and went to his kitchen.

Defendant came running back from the kitchen with a knife. He began swinging the knife at Parrish. Parrish grabbed defendant's wrist, but defendant broke free. Parrish then attempted to dodge the knife. Vandenbrink and Dustin Nunamaker came to the hallway, and Vandenbrink got defendant in a choke hold. Defendant eventually dropped the knife. The knife incident lasted about 30 seconds, and Parrish sustained a cut above his left eye, a cut to his left hip, and a "nick" on his upper torso. Parrish did not seek medical treatment or contact the police because he had been drinking.

Bates testified he was at Frazier's apartment that evening when Crow entered the apartment and stated defendant had pushed her head against the stove. He did not see or hear any of that incident. After talking with Crow, he, along with Parrish and Vandenbrink, confronted defendant about the incident outside defendant's door. The reason defendant gave for slamming Crow's head into the stove was that she was not respecting his house. The three continued to yell at defendant until he snapped. At that point, defendant went into the kitchen, got a knife, ran out the door, and began flailing the knife around. Parrish "got most of it." Eventually, Vandenbrink grabbed defendant around the neck until he dropped the knife. Bates, who was 17 years old at the time of the incident, also admitted he was drinking alcohol that night.

Vandenbrink also testified he was drinking underage the night of the incident and admitted he was drunk by the time the incident occurred. He was in defendant's living room when he heard a noise from the kitchen that sounded like someone smashing into the stove. He did not see anything. After everyone cleared out of defendant's apartment, he, along with Bates and Parrish, started an argument with defendant outside his door about Crow's head being slammed into the stove. Defendant stated, "I got something for you," and got a knife from his kitchen. Defendant then came running out of his apartment, slammed Parrish into the wall, and began slashing at him with the knife. He pulled defendant by the neck off of Parrish and held defendant until he dropped the knife.

Parrish, Bates, and Vandenbrink all testified Parrish did not have a knife during the incident.

William Flemming, defendant's nephew, testified he spoke to defendant on Christmas afternoon at defendant's parents' (Flemming's grandparents') house. Defendant told Flemming that he had a party the night before at his apartment, at which he had quite a bit to drink. During the party, he got into a fight with a "guy" over music, "went off," and stabbed the "guy" numerous times. The incident had occurred outside defendant's apartment, and defendant did not return to his apartment because he did not want to be arrested. He had his parents pick him up near his apartment building. Defendant then asked Flemming, who lived in Peoria, Illinois, for a ride to Bloomington, Illinois, so he could get out of the area. After dropping defendant off at a Denny's in Bloomington, Flemming reported the incident to police.

Defendant testified he had quite a few drinks during the party. At around 11:30 p.m., he was talking to his children on the telephone to make plans with them since he was going to have them for five days. When he got off the phone, he saw Crow and Nunamaker coming out of his bathroom after having taken a shower together. At that point, he kicked everyone out of his apartment except for Crow. He got really mad at her and "smacked" her in the head. He did not hear her head hit the stove.

After Crow left, Parrish barged back in his apartment with a knife in his hand. Defendant recognized the knife as one he had given Parrish a long time ago. Parrish was mad about what defendant had done to Crow and was swinging the knife at defendant. Since Parrish was threatening him, defendant tried to get the knife away. He wrestled with Parrish until he got the knife out of his hands. Defendant then threw Parrish and the knife out into the hallway. Additionally, defendant denied having a conversation with Flemming beyond asking for a ride to Bloomington to see his kids.

In rebuttal, the State entered a certified copy of defendant's 2002 conviction for theft. Parrish testified defendant never gave him a knife as a gift, and he never had a knife or weapon in his possession that evening. Flemming testified defendant never mentioned visiting his children until they got to Bloomington, where defendant called them.

After hearing all of the evidence, the jury found defendant guilty as charged. At a June 2004 hearing, the trial court sentenced defendant as stated. This appeal followed.

## II. ANALYSIS

### A. Other-Crimes Evidence

Defendant first asserts he is entitled to a new trial because of the admission of evidence regarding his actions toward Crow. He

acknowledges he has forfeited this issue but urges this court to review the issue under the plain-error rule (134 Ill. 2d R. 615(a)).

■ Under the plain-error rule, a reviewing court can consider an unpreserved error only under the following circumstances: "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 479 (2005). Here, defendant asserts the admission of the other-crimes evidence falls under the second circumstance. Thus, defendant must prove (1) plain error and (2) that the error was so serious it affected the fairness of his trial and challenged the judicial process's integrity. See *Herron*, 215 Ill. 2d at 187, 830 N.E.2d at 479-80. Thus, we first consider whether any error occurred at all. See *People v. Durr*, 215 Ill. 2d 283, 299, 830 N.E.2d 527, 536 (2005).

■ Other-crimes evidence is inadmissible for the purpose of showing the defendant's disposition or propensity to commit crime. However, such evidence is admissible if it is relevant for any purpose other than to show the propensity to commit crime. When other-crimes evidence is offered, the trial court must weigh its probative value against its prejudicial effect and may exclude the evidence if its prejudicial effect substantially outweighs its probative value. *People v. Illgen*, 145 Ill. 2d 353, 365, 583 N.E.2d 515, 519 (1991).

This court has specifically recognized evidence of another crime is admissible if it is part of a continuing narrative of the event giving rise to the offense or, in other words, intertwined with the offense charged. *People v. Harper*, 251 Ill. App. 3d 801, 804, 623 N.E.2d 775, 777 (1993); see also *People v. Lewis*, 243 Ill. App. 3d 618, 625-26, 611 N.E.2d 1334, 1339 (1993) (other-crimes evidence is admissible where it relates to the events that led to the charged offense). As this court has explained, "[w]hen facts concerning uncharged criminal conduct are all part of a continuing narrative which concerns the circumstances attending the entire transaction, they do not concern separate, distinct, and unconnected crimes." *People v. Collette*, 217 Ill. App. 3d 465, 472, 577 N.E.2d 550, 555 (1991).

■ Here, defendant's incident with Crow is part of the events that led to the charged offenses as it explains how the altercation between Parrish and defendant arose. While none of the State's witnesses saw the Crow incident, they all testified Crow told them about it and the incident was the reason an argument ensued between Parrish and defendant. Additionally, two of the witnesses heard a noise that corroborated Crow's statement. Defendant further asserts Crow did not testify. However, no evidence was presented that she witnessed the charged offenses, and thus her testimony would only draw attention

to her encounter with defendant. Accordingly, we find the testimony regarding the Crow incident was relevant for another purpose other than to show the propensity to commit crime.

Defendant further argues that even if the Crow evidence was relevant, its probative value was outweighed by its prejudicial effect. We disagree. The Crow incident was a significant part of the facts that led to the knife incident, and the evidence regarding the Crow incident was limited to its role in the knife incident. In fact, the Crow evidence was critical to defendant's self-defense argument since it demonstrated a motive for Parrish to attack defendant.

Accordingly, we find the evidence relating to the Crow incident was admissible, and thus defendant has failed to establish an error occurred.

### B. Effective Assistance of Counsel

Defendant next contends he did not receive effective assistance of trial counsel because his counsel did not object to the admission of the other-crimes evidence, did not preserve the issue for appeal, and failed to request a limiting instruction as to the other-crimes evidence (see Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000)).

This court reviews ineffective-assistance-of-counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163.

To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. The *Strickland* Court noted that when a case is more easily decided on the ground of lack of sufficient prejudice rather than that counsel's representation was constitutionally deficient, the court should do so. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Since we have already found the other-crimes evidence was admissible, defendant cannot establish he was prejudiced by his counsel's failure to either challenge the admissibility of the evidence or preserve the admissibility issue for appeal. Defendant also cannot establish prejudice as to his counsel's failure to request a limiting instruction because a limiting instruction is not required when, as here, "the other-crimes evidence is an integral part of the context of the crime for which defendant has been tried." *People v. Figueroa*, 341 Ill. App. 3d 665, 672, 793 N.E.2d 712, 718 (2003). Additionally, since defendant testified to the other-crimes evidence, it is unlikely a limiting instruction would have affected the ultimate outcome of this case. See *Figueroa*, 341 Ill. App. 3d at 672-73, 793 N.E.2d at 718. Accordingly, defendant has failed to prove he was denied effective assistance of counsel.

## III. CONCLUSION

For the reasons stated, we affirm defendant's conviction and sentence.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.