NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180723-U

NO. 4-18-0723

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 16, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| MICHAEL D. TURNER, | ) | No. 18CF40 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Steigmann and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1　*Held*:　(1) The manner in which the trial court asked the prospective jurors about the *Zehr* principles was not a clear and obvious error.

(2) Defendant did not receive ineffective assistance of counsel.

(3) The State presented sufficient evidence for a rational trier of fact to find defendant guilty.

(4) The trial court did not abuse its discretion by sentencing defendant to 20 years in prison.

¶ 2　　　On April 5, 2018, a grand jury returned an indictment against defendant, Michael D. Turner, for the offense of unlawful possession of 15 grams or more but less than 100 grams of a substance containing heroin with the intent to deliver (720 ILCS 570/401(a)(1)(A) (West 2018)). In July 2018, a jury found defendant guilty of the charge. On August 20, 2018, the trial court sentenced defendant to 20 years in prison. Defendant appeals, arguing as follows: (1) the

State failed to prove defendant's guilt beyond a reasonable doubt; (2) the court failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012); (3) defendant's trial counsel was ineffective for failing to object to evidence of other crimes and bad acts committed by defendant; and (4) the court imposed an excessive sentence on defendant. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4         Defendant's jury trial began on July 10, 2018. During *voir dire*, pursuant to Rule 431(b), the trial court stated the following on the record:

> "The next four questions I have for you I'm asking—now, all these questions are [for] each of you individually, but I ask them as a group to be efficient about this. But I want you to really think about these four in particular because they're fundamental principles of our judicial system. The defendant is presumed innocent of the charge against him. Does anyone not understand this principle, the presumption of innocence? All right. All understand it. Does anyone not accept this principle, the presumption of innocence? All accept it.
>
> All right. Before the defendant can be convicted the State must prove the defendant guilty by proof beyond a reasonable doubt. Does anyone not understand this concept that the State must prove the defendant guilty by proof beyond a reasonable doubt? Anyone not understand it? Okay. All understand it. Anyone not accept it? All accept it.
>
> The next principle is the defendant is not required to offer any evidence on his own behalf. As I've already indicated, the burden is on the State to prove the defendant guilty by proof beyond a reasonable doubt. The burden is not on the defendant to prove that he is innocent. He's presumed innocent. So the defendant

is not required to offer any evidence on his own behalf. Does anyone not understand this principle? Does anyone not accept this principle? All understand it. All accept it.

The fourth principle is the defendant's failure to testify cannot be held against him. Under the Fifth Amendment to the United States Constitution we all enjoy the right to remain silent. And that, of course, in this court includes the defendant. So does anyone not understand this principle, the defendant's right to remain silent? Does anyone not accept this principle? All understand it. All accept it."

Defendant did not object to the manner in which the trial court asked the prospective jurors these questions.

¶ 5 Detective Albert Holocker of the Woodford County Sheriff's Office was the State's first witness. He testified he was involved in the execution of a search warrant at a residence at 210 North Franklin in Roanoke, Illinois, on April 4, 2018, at approximately 5:30 or 6 a.m. The Illinois State Police Special Weapons and Tactics (SWAT) team initially made a forced entry into the home after knocking and announcing their presence. After the SWAT team secured the home, Holocker went inside. Defendant was sitting on the bed in a bedroom to the left of the front door of the house. Holocker could not testify this was where defendant was when the SWAT team first went in the house or if defendant normally used the bedroom. During a systematic search of the house by the police, Holocker found a plastic bag containing suspected heroin along the west wall of the first bedroom to the left of the front door where Holocker saw defendant on the bed. Joni Little, a forensic scientist at the Illinois State Police Forensic Science Laboratory in Morton, testified the substance was heroin and weighed 21.3 grams.

¶ 6    Holocker testified the typical dose for heroin is between a tenth and one half of a gram. Based on Holocker's experience and knowledge gained from individuals who use heroin, users normally do not possess multiple doses of heroin because their urge to use all the heroin would be too strong to ration a large amount of the drug over an extended period of time. However, heroin dealers buy the drug in bulk because they can buy at a discounted rate. A dealer will then divide and package the heroin into individual doses to sell to users. Holocker testified anything more than 5 grams is a large amount of heroin and indicates an intent to deliver the drug to others.

¶ 7    Inspector Ricardo Mancha of the Tazewell County Sheriff's Office testified he assisted in the execution of the search warrant on April 4, 2018, collecting evidenced as it was found by the other officers. He did not enter the home until it was secured by the SWAT team. In the bedroom where Holocker saw defendant, Mancha collected the following items with defendant's name: a Visa debit card, a social security card, a tax document, and a Link card. He also collected a scale and a plastic bag containing heroin from the bedroom. Syringes were found throughout the house. Mancha did not know where defendant stayed in the house.

¶ 8    Officer Patrick Murphy of the Chillicothe Police Department testified he also participated in the execution of the search warrant in this case. He conducted surveillance on the house before the SWAT team went inside. After the SWAT team secured the house, he searched the bedroom where Holocker saw defendant. Murphy found items of interest in the bedroom including a Visa credit card in defendant's name, another credit card in defendant's name, a scale, a bag containing heroin sitting on the floor, and a plate with a white powdery substance on it. On cross-examination, Murphy testified he did not find a wallet or driver's license belonging to defendant.

¶ 9        Illinois State Police Master Sergeant David Stenger testified he also took part in the execution of the search warrant. After the home was cleared and secured by the SWAT team, Stenger went inside and searched the upper level of the home, finding miscellaneous paraphernalia but no heroin. He also searched part of the kitchen but found nothing of evidentiary value.

¶ 10        Illinois State Police Trooper Robert Coulter testified he was also present when the search warrant was executed. He did not search the first bedroom where the heroin was found but did search another bedroom on the first floor of the house, finding drug paraphernalia, a wallet, and an identification card belonging to Blake Mariani.

¶ 11        Jerrit Kamp testified he was currently housed in the Woodford County jail. Prior to his arrest, he lived at the residence at 210 North Franklin where the search warrant was executed. Kamp entered a cooperation agreement with the State to testify truthfully in exchange for receiving a lesser charge with a sentencing range of probation to 15 years in prison. Kamp stated he was present along with defendant and Blake Mariani when the search warrant was executed.

¶ 12        Kamp met defendant in Peoria three or four months before the search. Defendant and Mariani moved into the home Kamp was renting at 210 North Franklin about two to three months before the search warrant was executed. Defendant stayed in the room where the heroin was found. Mariani stayed in another room on the main floor of the house. Kamp knew Mariani through defendant. Kamp's room was upstairs. Defendant and Mariani were supposed to help Kamp pay rent for the home but did not. Kamp claimed defendant and Mariani took advantage of him.

¶ 13        Defendant supplied Kamp with heroin. Kamp used heroin on a daily basis.

Defendant kept his heroin at the house. According to Kamp, defendant's heroin came from Chicago. Kamp had given defendant rides to Chicago for defendant to purchase heroin. They went to Chicago every two weeks. In his bedroom at the home in Roanoke, defendant would divide and package the heroin.

¶ 14 Kamp claimed he personally never had a large amount of heroin in his bedroom at the home. Instead, he only kept the amount he was using. Kamp saw defendant deliver heroin to other individuals and was afraid of defendant because of threats defendant made to Kamp. Defendant controlled the house through fear. Kamp told the jury he was not allowed in defendant's room without defendant's permission. The room where the heroin was recovered by the police belonged to defendant. To Kamp's knowledge, defendant did not use heroin.

¶ 15 Defendant chose not to testify on his own behalf.

¶ 16 The jury found defendant guilty of unlawful possession of heroin with the intent to deliver. On August 20, 2018, the trial court sentenced defendant to 20 years in prison with 3 years of mandatory supervised release (MSR). The court noted defendant was on probation for possession of heroin when he was arrested in this case. The court stated:

> "[T]he court will not and cannot overlook the fact that [defendant] was on probation for possessing heroin, and he possessed a significant amount of heroin in this instance, and he possessed it with the intent to spread that poison to others. And that shows a significant dedication to not changing one's ways, to not learning from past mistakes, and a complete and utter disregard for the law and for the need to conduct himself in accordance with the law."

¶ 17 On September 12, 2018, defendant filed a motion to reconsider sentence, arguing the sentence was unfair, unduly harsh, and excessive given defendant's criminal history, the facts

of his case, and other mitigating factors.  In October 2018, the trial court denied defendant's motion to reconsider.

¶ 18          This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20                         A. Supreme Court Rule 431(b)

¶ 21          Defendant argues he is entitled to a new trial because the trial court did not comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012).  While acknowledging the trial court recited the four principles required by *People v. Zehr*, 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064 (1984), defendant argues "the court did not implement the specific question-and-response framework required by Illinois Supreme Court Rule 431(b), thereby failing to ascertain whether the potential jurors 'accepted' and 'understood' the *Zehr* principles." Defendant takes issue with the fact the trial court asked whether any of the jurors "did not understand" and "did not accept" the *Zehr* principles.

¶ 22          Defendant did not object to the manner in which the trial court questioned the prospective jurors in the trial court.  As a result, the issue is forfeited.  However, defendant asks this court to review the issue pursuant to the plain error rule.  Plain error is established if "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or if "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence."  (Internal quotation marks omitted.)  *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675.  Ordinarily, the first step in any plain error analysis is determining whether a clear or obvious error occurred.  *Sebby*, 2017 IL 119445, ¶ 49.

¶ 23    The purpose of Rule 431(b) is to ensure potential jurors understand and accept the following *Zehr* principles: (1) the defendant being tried is presumed innocent, (2) the State bears the burden of proving the defendant's guilt beyond a reasonable doubt, (3) the defendant has no obligation to present any evidence, and (4) the defendant's decision not to testify cannot be held against him.  Ill. S. Ct. R. 431(b) (eff. July 1, 2012).  A trial judge's best course of conduct is to ask each prospective juror whether he or she "understands" each of the *Zehr* principles and whether he or she "accepts" the same.

¶ 24    Defendant argues the trial court "did not instruct the [prospective] jurors as to what they should do to register not understanding or not accepting the principles."  This is not correct.  When the court first began questioning the prospective jurors, it stated:

> "All right.  I'm going to start by asking questions.  And my questions initially will simply require you to raise your hand.  I will make marks on my sheet up here, and then I will follow up with questions for those that have raised their hands.  So the first several questions I have are pretty straightforward and simple, and so I think you will get the hang for what we need to do here."

¶ 25    As to the way the trial court asked the prospective jurors about the *Zehr* principles, we note the Third District has stated:

> "[W]e find no support for defendant's assertion that the response to a Rule 431(b) *voir dire* must be in the affirmative.  For example, a court that asked the question, 'does any member of the venire not understand and accept those principles?' would be seeking responses in the negative, but would still be in compliance with the rule.  It would be imprudent to find error based solely on the syntactical structure of a circuit court's questions." *People v. Lilly*, 2018 IL App (3d)

150855, ¶ 15, 116 N.E.3d 991.

Further, our supreme court has stated a court asking for disagreement and getting none is arguably equivalent to juror acceptance of the principles. See *People v. Wilmington*, 2013 IL 112938, ¶ 32, 983 N.E.2d 1015. As a result, we do not find the trial court made a clear or obvious error in phrasing his *Zehr* questions in the negative. When the court's questions are read in the context of the rest of its questions to the prospective jurors, each of the prospective jurors had the opportunity to inform the trial court he or she did not understand or accept the *Zehr* principles.

¶ 26        Defendant's reliance on *People v. Dismuke*, 2017 IL App (2d) 141203, 79 N.E.3d 864, is misplaced. In *Dismuke,* the prospective jurors were also using raised hands to respond to the trial court's Rule 431(b) questions. However, the trial court's questions in *Dismuke* were not clear. The Second District noted:

> "The inclusion of the court's entire colloquy with the venire by Justice
> Burke in his special concurrence demonstrates how unclear and inadequate the
> court's instructions were. First, the court instructed the potential jurors *not* to
> raise their hands if they understood, agreed with, and accepted the *Zehr*
> principles. Second, the court instructed the potential jurors to *raise* their hands in
> response to its questions if they did *not* understand or accept the principles.
> Third, after reciting each principle, the court changed the question from
> 'understand and accept' to 'difficulty or disagreement.' Thus, the potential jurors
> received three different instructions about what they were supposed to do with
> their hands. More problematic was the court's substitution of 'difficulty or
> disagreement' for 'understand and accept.' " *Dismuke*, 2017 IL App (2d) 141203,

¶ 54.

In the case *sub judice*, the trial court's questions with regard to Rule 431(b) were clear.

¶ 27                                    B. Ineffective Assistance of Counsel

¶ 28            We next address defendant's argument his trial counsel was ineffective for not objecting to the State introducing evidence of other crimes or bad acts committed by defendant through the testimony of Jerrit Kamp. Kamp's testimony included details of both defendant's prior possession and distribution of heroin and threatening behavior toward Kamp while defendant was living at the home Kamp was renting. Defendant argues: "No reasonable trial strategy would allow the jury to hear that Turner frequently dealt heroin and forced other people to deliver it for him using threats of physical harm. Moreover, there is a reasonable probability that, but[ ]for counsel's inaction, the jury would have acquitted [defendant]."

¶ 29            This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a *defendant must prove* (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance prejudiced the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the first prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and his or her performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Based on the facts in this case, defendant cannot establish his trial counsel's failure to object to Kamp's testimony was constitutionally deficient because Kamp's testimony was not clearly inadmissible.

¶ 30            According to our supreme court, "Evidence of other crimes is admissible if it is

relevant for any purpose other than to show the defendant's propensity to commit crime. [Citation.] Other-crimes evidence is admissible to show *modus operandi*, intent, motive, identity, or absence of mistake with respect to the crime with which the defendant is charged." *People v. Pikes*, 2013 IL 115171, ¶ 11, 998 N.E.2d 1247. Our supreme court also noted it "has recognized that evidence of other crimes may be admitted if it is part of the 'continuing narrative' of the charged crime. [Citation.] Such uncharged crimes do not constitute separate, distinct, and disconnected crimes. [Citation.] It is this latter type of crime with which the other-crimes doctrine is concerned." *Pikes*, 2013 IL 115171, ¶ 20.

¶ 31     The Fourth District has also stated evidence of another crime is admissible when part of a continuing narrative of the event giving rise to, or intertwined with, the charged offense. *People v. Thompson*, 359 Ill. App. 3d 947, 951, 835 N.E.2d 933, 936 (2005). "When facts concerning uncharged conduct are all part of a continuing narrative which concerns the circumstances attending the entire transaction, they do not concern separate, distinct, and unconnected crimes." *People v. Collette*, 217 Ill. App. 3d 465, 472, 577 N.E.2d 550, 555 (1991).

¶ 32     The evidence Kamp offered concerned defendant's prior bad acts over a period of a few months between Kamp meeting defendant and defendant's arrest in this case. This court has noted the continuing narrative exception is not limited to bad acts that occurred within moments of the charged offense. *People v. Carter*, 362 Ill. App. 3d 1180, 1191, 841 N.E.2d 1052, 1061 (2005). According to this court, "the temporal link between other-crimes evidence and evidence of the immediate offense is but one of several factors for the trial court to consider as it exercises its discretion to determine whether the continuing-narrative exception applies in a given case." *Carter*, 362 Ill. App. 3d at 1191, 841 N.E.2d at 1061.

¶ 33     Defendant takes issue with Kamp's testimony he saw defendant with heroin every

- 11 -

day during the three-month period—while defendant was living with Kamp—prior to defendant's arrest. According to Kamp's testimony, defendant went to Chicago every two weeks and purchased heroin. Defendant would then divide, package, and sell the heroin from the residence in Roanoke. Kamp also testified he delivered heroin during this period for defendant because defendant threatened Kamp with physical harm.

¶ 34 This evidence was clearly relevant as it increased the probability the heroin found in the front bedroom of Kamp's residence belonged to defendant. It also increased the probability defendant intended to divide and distribute the heroin. Kamp's testimony was part of a continuing narrative of defendant's possession and distribution of heroin while living in the house Kamp was renting.

¶ 35 Defendant also argues the prejudicial impact of the other-crimes evidence outweighed it probative value. We note a trial court should exclude other-crimes evidence if the prejudicial effect of the evidence substantially outweighs its probative value. *Pikes*, 2013 IL 115171, ¶ 11. However, based on the facts in this case, the probative value of Kamp's testimony was not substantially outweighed by its prejudicial effect because it was important in establishing the heroin found in the bedroom of the residence belonged to defendant and not Kamp or Mariani. As a result, because this evidence could have been admitted over objection, we do not find defendant's trial counsel was ineffective for failing to object to its introduction.

¶ 36 C. Sufficiency of Evidence to Convict

¶ 37 We next address defendant's argument the State did not prove his guilt beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence, a reviewing court considers whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when the evidence is viewed in the light most favorable to the

prosecution. *People v. Piatkowski*, 225 Ill. 2d 551, 566, 870 N.E.2d 403, 411 (2007). For a jury to find a defendant guilty of possession with the intent to deliver, "the State must prove beyond a reasonable doubt (1) the defendant had knowledge of the presence of the controlled substance; (2) the controlled substance was in the immediate possession or control of the defendant; and (3) the defendant intended to deliver the controlled substance." *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 64.

¶ 38        Defendant contends no physical evidence connected him to the heroin found during the police raid. According to defendant, the only direct evidence connecting him to the heroin was Kamp's testimony, which was part of a plea deal on Kamp's behalf. Defendant argues Kamp's testimony was uncorroborated and had limited persuasive value. According to defendant, "the only conclusion that should be drawn from the location of the heroin is that it was hastily and purposefully discarded by Kamp in an attempt to conceal his own possession of it."

¶ 39        This would be viewing the evidence in a light most favorable to defendant, which is not the standard we apply. Viewing Kamp's testimony in the light most favorable to the State, the jury could have found it persuasive the heroin found was defendant's, defendant knew it was in his room, and defendant intended to divide and sell the heroin. It would not have been unreasonable for the jury to find Kamp's testimony credible. The jury also had evidence the police found objects belonging to defendant in the room with the heroin. Finally, the jury could make a reasonable inference defendant was in the room where the heroin was found when the SWAT team entered the home. Because a rational trier of fact could have found defendant guilty based on the evidence in this case, we will not disturb the jury's verdict.

¶ 40                                D. Defendant's Sentence

¶ 41       Defendant also argues the trial court abused its discretion by sentencing him to 20 years in prison.  According to defendant, defendant's sentence is inconsistent with the seriousness of the offense and his rehabilitative potential.  Defendant's sentencing range in this case was between 6 and 30 years in prison (720 ILCS 570/401(a)(1)(A) (West 2018)).

¶ 42       When sentencing a defendant, trial courts have broad discretionary powers. *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010).  A court's sentencing decision is entitled to great deference.  *Alexander*, 239 Ill. 2d at 212, 940 N.E.2d at 1066.  A reviewing court may not alter a defendant's sentence unless the trial court abused its discretion. *Alexander*, 239 Ill. 2d at 212, 940 N.E.2d at 1066.  "A sentence will be deemed an abuse of discretion where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense."  (Internal quotation omitted.) *Alexander*, 239 Ill. 2d at 212, 940 N.E.2d at 1066.

¶ 43       Our supreme court has noted the trial judge was able to observe the defendant during the proceedings while the reviewing court must rely simply on the record.  *Alexander*, 239 Ill. 2d at 213, 940 N.E.2d at 1066.  The trial court is also able to consider and weigh such factors as the defendant's demeanor, credibility, mentality, moral character, environment, habits, and age.  *Alexander*, 239 Ill. 2d at 213, 940 N.E.2d at 1066.  A reviewing court may not substitute its judgment for the trial court's simply because it would have weighed the factors differently.  *Alexander*, 239 Ill. 2d at 213, 940 N.E.2d at 1066.

¶ 44       Defendant recognized his prior conviction for possession of a controlled substance was a proper aggravating factor for the trial court to consider.  However, he contends the court focused exclusively on this prior conviction as an aggravating factor and ignored his rehabilitative potential.  The problem with defendant's argument is the trial court was not simply

focused on the prior conviction. It was also considering the fact defendant was arrested in this case while he was on probation for the prior conviction and how this affected defendant's rehabilitative potential. The court was considering defendant's rehabilitative potential when it stated:

> "[T]he court will not and cannot overlook the fact that he was on probation for possessing heroin, and he possessed a significant amount of heroin in this instance, and he possessed it with the intent to spread that poison to others. And that shows a significant dedication to not changing one's ways, to not learning from past mistakes, and a complete and utter disregard for the law and for the need to conduct himself in accordance with the law."

As a result, defendant's argument the trial court did not consider his rehabilitative potential is meritless. Based on the record in this case, the trial court did not abuse its discretion in sentencing defendant.

¶ 45                                III. CONCLUSION

¶ 46         For the reasons stated, we affirm defendant's conviction and sentence in this case.

¶ 47         Affirmed.